**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 20-1342**

———————

JANE D. DICOCCO, MD,

  Plaintiff-Appellant,

  v.

MERRICK B. GARLAND, Attorney General, United States Department of Justice,

  Defendant-Appellee.

———————

Appeal from the United States District Court for the Eastern District of Virginia at Richmond.  John A. Gibney, Jr., Senior District Judge.  (3:19-cv-00159-JAG)

———————

Argued:  March 11, 2021                    Decided:  November 17, 2021

———————

Before WILKINSON, FLOYD, and RICHARDSON, Circuit Judges.

———————

Affirmed in part, reversed in part, and remanded by published opinion.  Judge Richardson wrote the opinion, in which Judge Wilkinson joined.  Judge Floyd wrote an opinion concurring in part and dissenting in part.

———————

**ARGUED:**  Jay J. Levit, LAW OFFICE OF JAY J. LEVIT, Glen Allen, Virginia, for Appellant.  Jonathan Tyler Lucier, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.  **ON BRIEF:**  Scott G. Crowley, Sr., CROWLEY & CROWLEY, P.C., Glen Allen, Virginia, for Appellant.  G. Zachary Terwilliger, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

1

RICHARDSON, Circuit Judge:

Dr. Jane DiCocco brought Title VII and Age Discrimination in Employment Act ("ADEA") claims against the U.S. Attorney General because she failed an allegedly discriminatory physical-fitness test that was a condition of her federal employment and was told to either retake the test, resign, or be fired. She resigned. The district court dismissed her complaint for lack of Article III standing, finding that her resignation did not constitute an "adverse employment action" that could serve as the basis of either claim.

But the district court inappropriately intertwined its standing analysis with the merits. Dr. DiCocco alleged that she suffered financial and job-related injuries in fact that are fairly traceable to the government's action and likely to be redressed by a favorable ruling. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). So she has Article III standing. But we must still dismiss her ADEA claim because the ADEA provision applicable to federal-sector employees does not provide a disparate-impact cause of action. So her claim does not fall within the government's waiver of sovereign immunity. We decline, however, to address arguments for rejecting her remaining Title VII claim under Rule 12(b)(6). We therefore affirm the district court's dismissal of the ADEA claim but remand the Title VII claim for further proceedings.

## I.    Background

In July 2014, Dr. Jane DiCocco accepted a job as a psychiatrist with the Bureau of Prisons ("BOP") at the Federal Correctional Complex in Petersburg, Virginia. At that time, Dr. DiCocco was sixty-seven years old.

2

As a condition of her hiring, Dr. DiCocco—like all new BOP employees regardless of age, position, or gender—had to take and pass the Physical Abilities Test. Employees taking the test must drag a seventy-five-pound dummy at least 694 feet for three minutes, climb a ladder to retrieve an object within seven seconds, complete an obstacle course in fifty-eight seconds, run a quarter mile and handcuff someone within two minutes and thirty-five seconds, and climb three flights of stairs in forty-five seconds while wearing a twenty-pound weight belt. Employees receive scores for the five components, which are aggregated and measured against a passing composite score.

The first time Dr. DiCocco took the test, she failed. Under BOP policy, she could retake the test within twenty-four hours, but she declined, "fearing that in her exhausted physical condition, she would be unable [to] complete it in a satisfactory time during the second attempt." J.A. 7. She was then "informed that unless she resigned, her employment with BOP would be terminated for failure to pass the [test] within the required times." *Id.* She chose to resign.

After exhausting her administrative remedies, Dr. DiCocco filed a complaint in federal district court against the Attorney General, alleging disparate-impact theories of sex discrimination under Title VII, 42 U.S.C. §§ 2000e to 2000e-17, and age discrimination under the ADEA, 29 U.S.C. §§ 621–634. The government moved to dismiss her complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and Rule 12(b)(6) for failure to state a claim. The district court dismissed the complaint without prejudice for lack of standing, finding that Dr. DiCocco had not suffered an injury in fact traceable to the BOP's actions because the facts in her complaint did not constitute an

3

"adverse employment action" under Title VII or the ADEA. *DiCocco v. Barr*, No. 3:19-cv-159, 2020 WL 902530, at *2–5 (E.D. Va. Feb. 25, 2020). Dr. DiCocco timely appealed.

We have jurisdiction to hear her appeal under 28 U.S.C. § 1291 because the standing defect identified by the district court could not have been cured by amendment. *See Bing v. Brivo Sys., LLC*, 959 F.3d 605, 610 (4th Cir. 2020).

## II.    Discussion

We may affirm the district court's dismissal on "any grounds apparent from the record." *Pitt Cnty. v. Hotels.com, L.P.*, 553 F.3d 308, 311 (4th Cir. 2009) (quoting *Suter v. United States*, 441 F.3d 306, 311 (4th Cir. 2006)). The Government raises three: (1) lack of Article III standing, (2) absence of a disparate-impact cause of action falling under the ADEA's sovereign-immunity waiver, and (3) failure to state a claim under Title VII. We hold that Dr. DiCocco has standing but that the ADEA's federal-employer provision does not include claims for disparate-impact liability. Finally, we remand the Title VII claim for consideration by the district court.

### A.    Standing

We start with whether Dr. DiCocco has standing to bring both claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). A plaintiff has Article III standing if she (1) suffers an injury in fact that is (2) fairly traceable to the challenged conduct and (3) likely to be redressed if the court rules in her favor. *Lujan*, 504 U.S. at 560. We review the district court's dismissal for lack of standing de novo. *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006). Because the government brought a "facial" challenge to Dr. DiCocco's standing, contending "that [the] complaint simply fails to allege facts upon

4

which subject matter jurisdiction can be based," we accept all well-pleaded facts in the complaint as true. *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)).

The district court began its analysis by finding that Dr. DiCocco failed to state a valid cause of action because she alleged no injury and therefore lacked standing. *DiCocco*, 2020 WL 902530, at *3–5. But this approach improperly conflated the threshold standing question with the merits of her claims. *Pitt Cnty.*, 553 F.3d at 312. Standing does not turn on whether a plaintiff has definitively stated a valid cause of action. *Id.*; *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014) ("[T]he absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case." (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 642–43 (2002))). In other words, a valid claim for relief is not a prerequisite for standing. *See, e.g.*, *Trump v. Hawaii*, 138 S. Ct. 2392, 2416 (2018) (rejecting an argument that plaintiffs lacked Article III standing because the Establishment Clause did not "give them a legally protected interest"). "For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Bell v. Hood*, 327 U.S. 678, 682 (1946).

Dr. DiCocco has adequately pleaded an injury in fact. Dr. DiCocco alleges that she was injured by a loss of employment and the resulting loss of wages and other benefits. *See* J.A. 10–11. Such harms are "classic and paradigmatic" injuries for standing purposes. *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 760 (4th Cir. 2018) (quoting *Cottrell v.*

5

*Alcon Lab'ys*, 874 F.3d 154, 163 (3d Cir. 2017)); *see also Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Emps. of Libr. of Congress, Inc. v. Billington*, 737 F.3d 767, 770–73 (D.C. Cir. 2013) (plaintiffs had Article III standing to bring Title VII retaliation claim based on the alleged denial of certain benefits, but still failed to state a claim because the complaint did not allege that any plaintiff engaged in a statutorily protected activity leading to a materially adverse action).

To satisfy standing's causation requirement, the alleged injury must be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (alterations in original) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976)). At the motion-to-dismiss stage, this burden is "relatively modest," *Bennett v. Spear*, 520 U.S. 154, 171 (1997), and lower than the causation showing required to prevail in a tort suit, *Nat. Res. Def. Council, Inc. v. Watkins*, 954 F.2d 974, 980 n.7 (4th Cir. 1992) (citing *Pub. Int. Rsch. Grp. of N.J., Inc. v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64, 72 (3d Cir. 1990)). "Proximate causation is not a requirement of Article III standing . . . ." *Lexmark*, 572 U.S. at 134 n.6.

Even so, a plaintiff's injury is not fairly traceable to the defendant's action if the plaintiff "independently caused his own injury." *Swann v. Sec'y, Ga.*, 668 F.3d 1285, 1288 (11th Cir. 2012); *see also Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 866 (6th Cir. 2020); *cf. Pennsylvania v. New Jersey*, 426 U.S. 660, 664, 667 (1976) (injuries to plaintiff-states were "self-inflicted" so they could not bring an original-jurisdiction suit in the Supreme Court). But Dr. DiCocco's allegations—which we must take as true at this

6

stage—do not show that she independently caused her own injuries. Dr. DiCocco's complaint alleges that BOP's ultimatum, which followed from the allegedly discriminatory policy, was the but-for cause of her injuries. J.A. 7 ("Dr. DiCocco was informed that unless she resigned, her employment with BOP would be terminated for failure to pass the [test] within the required times."). Perhaps Dr. DiCocco's choice to resign instead of retaking the test was a proximate cause of her injuries. But that does not defeat standing. *See Lexmark*, 572 U.S. at 134 n.6. She has alleged that her injuries were caused by BOP's allegedly discriminatory policy requiring new hires to take and pass the test or be terminated. Without that policy, according to Dr. DiCocco, she would not have resigned. So on the face of the complaint, Dr. DiCocco's alleged injuries are fairly traceable to the BOP's actions.

Finally, the Government does not dispute that Dr. DiCocco properly alleges that her injury will "likely" be "redressed by a favorable decision." *Lujan*, 504 U.S. at 561–62 (quoting *Simon*, 426 U.S. at 41–42). And we agree that Dr. DiCocco's injuries would be redressed by an award of damages or reinstatement to her prior position.

Because Dr. DiCocco's complaint adequately alleges an injury in fact, causation, and redressability, she has standing to raise her ADEA and Title VII claims in federal court. Her complaint should not have been dismissed on this ground.

### B.    ADEA disparate-impact cause of action

We continue to Dr. DiCocco's ADEA claim. Dr. DiCocco argues that the BOP's fitness test disparately impacts those older than 40. The government argues, however, that the ADEA provision that governs federal-government employees, 29 U.S.C. § 633a(a),

7

does not provide for a disparate-impact cause of action.[1]  Without a cause of action, Dr. DiCocco's claim fails.  The government continues, explaining that because the statute does not provide for such a claim, Congress has not waived the federal government's sovereign immunity for a federal employee's ADEA disparate-impact claim.

Sovereign immunity is "jurisdictional in nature" because it prevents a claim from being brought against the sovereign.  *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("[T]he United States may not be sued without its consent and . . . the existence of consent is a prerequisite for jurisdiction.").  The sovereign can waive its immunity by a clear statement that is "unequivocally expressed in statutory text."  *Lane v. Peña*, 518 U.S. 187, 192 (1996).  Because the scope of the waiver determines which claims can be brought against the sovereign, "the terms of [a sovereign's] consent to be sued in any court define that court's jurisdiction to entertain the suit."  *United*

---

[1] Disparate-impact claims address practices that have a disproportionately adverse effect on a certain group, even without evidence of discriminatory intent.  In 1971, the Supreme Court interpreted the Civil Rights Act of 1964 to "prohibit, in some cases, employers' facially neutral practices that, in fact, are 'discriminatory in operation.'"  *Ricci v. DeStefano*, 557 U.S. 557, 577–78 (2009) (quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971)).  In doing so, *Griggs* found the "'touchstone' for disparate-impact liability" to be the lack of "business necessity":  "If an employment practice which operates to exclude [minorities] cannot be shown to be related to job performance, the practice is prohibited."  *Id.* (alteration in original) (quoting *Griggs*, 401 U.S. at 431).  Twenty years after *Griggs*, the Civil Rights Act of 1991 codified the prohibition of disparate-impact discrimination on the basis of race, color, religion, sex, or national origin unless the employment practice was job-related and consistent with business necessity.  42 U.S.C. § 2000e-2(k)(1)(A)(i); *see also* § 2000e-2(k)(1)(A)(ii), (C) (permitting a plaintiff to overcome a job-related rationale if the employer refuses to adopt an available alternative employment practice that has less disparate impact and serves the employer's legitimate needs).

*States v. Sherwood*, 312 U.S. 584, 586 (1941). So "[j]urisdiction over any suit against the Government requires a clear statement from the United States waiving sovereign immunity together with a claim falling within the terms of the waiver." *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) (internal citations omitted).

The ADEA "unequivocally" waives the government's immunity from suit for claims under § 633a(a). *Gomez-Perez*, 553 U.S. at 491; *see* 29 U.S.C. § 633a(c) ("Any person aggrieved may bring a civil action in any Federal district court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter."). So we are left to determine whether Dr. DiCocco has asserted a claim that falls within the terms of that waiver.[2] She has not.

The ADEA's federal-sector provision, § 633a(a), provides: "All *personnel actions* affecting [federal] employees or applicants for [federal] employment who are at least 40 years of age . . . *shall be made free from any discrimination based on age*." 29 U.S.C. § 633a(a) (emphasis added). Our task is to determine whether this provision encompasses disparate-impact claims.

---

[2] It is true that any waiver of immunity must be "'unequivocally expressed in statutory text' and 'will be strictly construed, in terms of its scope, in favor of the sovereign.'" *Gomez-Perez*, 553 U.S. at 491 (quoting *Lane*, 518 U.S. at 192). Yet *Gomez-Perez* makes clear that because § 633a(c) is the provision waiving sovereign immunity, only § 633a(c) must "surmount" this "high hurdle"; the substantive provision in § 633a(a) need not. *Id.*

In doing so, we are guided by the Supreme Court's interpretation of similar provisions. *See Smith v. City of Jackson*, 544 U.S. 228, 234–40 (2005) (plurality opinion);[3] *Gomez-Perez*, 553 U.S. 474. Considering the framework provided by these two cases, we conclude that the language of § 633a(a) does not create a disparate-impact cause of action.

In *Smith*, a plurality of the Supreme Court held that "the 'disparate-impact' theory of recovery announced in *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971), for cases brought under Title VII of the Civil Rights Act of 1964, is cognizable under" § 623(a)(2), the section of the ADEA that addresses *private*-sector conduct. *Smith*, 544 U.S. at 230, 233–40 (plurality opinion). In so holding, the plurality relied on four arguments: statutory text, statutory structure, precedent, and deference to agency action. *Id.*

First, the text of the ADEA's private-sector provision, § 623(a)(2): It "shall be unlawful for an employer . . . to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." This text uses the same language, swapping the term "race" for "age," as § 703(a)(2) of Title VII, which *Griggs* found to encompass disparate-impact liability. *Smith*, 544 U.S. at

---

[3] While Sections I, II, and IV of *Smith* are the opinion of the Court, Section III—which discusses disparate-impact liability—was not joined by Justice Scalia and is therefore only a plurality opinion. *Smith*, 544 U.S. at 229. Despite not joining that Section, Justice Scalia stated that he "agree[d] with all of the Court's reasoning," finding it a compelling basis for deferring to the Equal Employment Opportunity Commission's similar interpretation. *Id.* at 243 (Scalia, J., concurring in part). The Court has since treated the plurality's opinion as essentially controlling. *See Meacham v. Knolls Atomic Power Lab'y*, 554 U.S. 84, 95–96 (2008).

233–34 (plurality opinion). As the ADEA used language derived from Title VII, the plurality presumed the two had the same meaning. So *Griggs* "strongly suggest[ed] that a disparate-impact theory" should also be cognizable under the ADEA's private-sector provision, § 623(a)(2). *Id.* at 236.

But *Smith* did not rely exclusively on the precedential value of *Griggs*. It went on to explain why, in its view, *Griggs* articulated the "better reading of the statutory text." *Id.* at 235. Disparate-impact liability fit the language of Title VII's private-sector provision (and therefore the comparable ADEA provision) because those provisions "focus[] on the *effects of the action* on the employee rather than the *motivation for the action* of the employer." *Id.* at 235–36 (emphasis added); *see also id.* at 234 (noting Title VII was directed at the consequences of the employer's action, not just the employer's motivation).[4] In contrast, disparate-impact liability was excluded where the ADEA's statutory language focused "on the employer's actions with respect to the targeted individual." *Id.* at 236 n.6.[5]

---

[4] The private-sector Title VII provision provides: "It shall be an unlawful employment practice for an employer . . . to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(2).

[5] As an example of statutory language focused on the employer's actions and not the impact on the employee, *Smith* noted another subsection of the ADEA, § 623(a)(1), which makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

Second, *Smith* relied on statutory structure, especially the existence of a statutory defense for "reasonable factors other than age," to support finding disparate-impact liability in the private-sector provision. *Id.* at 238–39. The defense permits an employer to "take any action otherwise prohibited [by the private-sector provision] . . . where the differentiation is based on reasonable factors other than age." 29 U.S.C. § 623(f)(1). This provision "plays its principal role," *Smith* explained, in disparate-impact cases "by precluding liability if the adverse impact was attributable to a nonage factor that was 'reasonable.'" *Smith*, 544 U.S. at 239 (plurality opinion). So its presence was probative of the statute's intended scope.

Finally, the Court noted that the Department of Labor, which drafted the legislation, and the Equal Employment Opportunity Commission, which was delegated the responsibility of enforcing the statute, had consistently interpreted the ADEA's private-sector provision to encompass disparate-impact liability. *Id.*; *see also id.* at 243 (Scalia, J., concurring) (characterizing this as *Chevron* deference).

*Smith* thus relied on text, structure, precedent, and agency guidance to find that the ADEA's *private*-sector provision authorizes a disparate-impact cause of action.

Three years after *Smith*, the Court again returned to interpret the ADEA. This time, the Court addressed the federal-sector provision of the ADEA, holding that the term "discrimination based on age" in the ADEA's federal-sector provision includes retaliation claims. *Gomez-Perez*, 553 U.S. at 479. To do so, the Court turned to precedent interpreting statutory language that was "not materially different" from the ADEA provision and that carried the same context: "remedial provisions aimed at prohibiting discrimination." *Id.*

12

at 481.  The first case, *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229 (1969), held that

retaliation claims could be brought under 42 U.S.C. § 1982.[6]  *Gomez-Perez*, 553 U.S. at

479.  While that provision did not explicitly "use the phrase 'discrimination based on

race,'" the Court found that to be the statute's plain meaning.  *Id.*  The second case, *Jackson*

*v. Birmingham Board of Education*, 544 U.S. 167 (2005), relied on *Sullivan*'s interpretation

of § 1982 to interpret 20 U.S.C. § 1681(a),[7] part of Title IX, to prohibit retaliation.  *Gomez-*

*Perez*, 553 U.S. at 480.  *Jackson* had "presume[d] that Congress was thoroughly familiar

with [*Sullivan*]" and expected Title IX "to be interpreted in conformity with [it]."  *Id.* at

485 (alteration in original) (quoting *Jackson*, 544 U.S. at 176).[8]

　　　*Gomez-Perez* followed "the reasoning of *Sullivan* and *Jackson*" to "interpret the

ADEA federal-sector provision's prohibition of 'discrimination based on age'" to likewise

prohibit retaliation.  *Id.* at 481.  In doing so, the Court explained that "retaliation is

discrimination 'on the basis of [a protected class]' because it is an *intentional* response to

the nature of the complaint:  an allegation of . . . discrimination [against that class]."  *Id.* at

480 (emphasis added) (quoting *Jackson*, 544 U.S. at 173–74).

---

　　　[6] "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."  42 U.S.C. § 1982.

　　　[7] "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ."  20 U.S.C. § 1681(a).

　　　[8] The ADEA's federal-sector provision was enacted in 1974, five years after *Sullivan* and two years after the enactment of Title IX.  *Id.* at 485.

The Court observed that the ADEA's federal-sector provision differed sharply from the private-sector provision. The federal-sector provision includes "a broad prohibition of 'discrimination,'" while the ADEA's private-sector provision includes "a list of specific prohibited practices." *Id.* at 487. So the Court found that the enactment of a broad ban, like Title VII's ban interpreted in *Griggs* and Title VI's ban interpreted in *Sullivan*, suggested Congress expected it to "be interpreted 'in conformity' with" *Sullivan* to include retaliation claims. *Id.* at 488 (citations omitted). The express inclusion of retaliation in the private-sector provision but not in the federal-sector provision lacks significance given the breadth of the prohibition and its similarity to the other broad bans. *Id.*

*Gomez-Perez* thus relied on the statute's text and the legal landscape in which it was enacted to find that the ADEA's public-sector provision authorizes a retaliation cause of action.

Dr. DiCocco urges us to read these two cases to find that the ADEA's federal-sector provision should also encompass disparate-impact liability. *See Lujan v. Walters*, 813 F.2d 1051, 1057–58 (10th Cir. 1987) (analyzing a disparate-impact claim under the federal-sector provision *without explaining why a disparate-impact claim is permitted*); *Palmer v. United States*, 794 F.2d 534, 536–37 (9th Cir. 1986) (same). But the arguments that emerge from *Smith* and *Gomez-Perez*—those based on the statute's text, the law's structure, and the legal landscape in which the law was passed—do not support such a finding here.[9]

---

[9] Neither party cites guidance from the Equal Employment Opportunity Commission that considers whether the federal-sector provision encompasses disparate-impact liability. *But see Kennedy v. McDonald*, No. 3:15-1844-MBS-KDW, 2016 WL (Continued)

Start with the text. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002). Section 633a(a) provides: "All personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . shall be made free from any discrimination based on age."

*Smith* teaches that statutes barring disparate treatment focus on the "*motivation for the action* of the employer." 544 U.S. at 235–36. Only where the statutory prohibition refers to the "consequences of actions and not just to the mindset of actors" is disparate-impact liability authorized. *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 135 S. Ct. 2507, 2518 (2015); *see also Smith*, 544 U.S. at 235–36. The ADEA's federal-sector provision addresses the actor's intent: "personnel *actions* affecting employees or applicants for employment . . . shall *be made* free from any discrimination based on age." 29 U.S.C. § 633a(a) (emphasis added). "The phrase 'free from any

11545907, at *11 (D.S.C. Dec. 28, 2016), *report and recommendation adopted in part*, 2017 WL 1162978 (D.S.C. Mar. 29, 2017) (referencing an Informal Discussion Letter through an out-of-date hyperlink that purportedly states that "the [Equal Employment Opportunity Commission] has long held that disparate impact claims are available under § 633a"). Contrary to the dissent's position, nothing in 29 C.F.R. § 1614.103(c) authorizes disparate-impact claims. That regulation merely identifies the broad scope of covered employment decisions. *See* 29 C.F.R. § 1614.103(c) ("Within the covered departments, agencies and units, this part applies to all employees and applicants for employment, and to all employment policies or practices affecting employees or applicants for employment including employees and applicants who are paid from nonappropriated funds, unless otherwise excluded."). At most, we have located a few Equal Employment Opportunity Commission appeals that appear to recognize disparate-impact claims under the federal-sector provision. *See Carpenter v. Peters*, EEOC DOC 0120065151, 2007 WL 632984, at *2 (EEOC Feb. 23, 2007); *Witkowsky v. Babbitt*, EEOC DOC 03970122, 1998 WL 563824, at *3 (EEOC Jan. 30, 1998). So this consideration from *Smith* does little to help Dr. DiCocco.

15

discrimination' is an adverbial phrase that modifies the verb 'made.'" *Babb v. Wilkie*, 140 S. Ct. 1168, 1173 (2020). So it "describes how a personnel action must be 'made.'" *Id.* at 1174. Thus, the statutory text asks if "age discrimination plays any part in the way a decision is made." *Id*. That focus on the "motivation for the employer's action"—and not the "effects of the action on the employee"—precludes disparate-impact liability under *Smith*. 544 U.S. at 235–36 & n.6.

Recall that, unlike § 633a(a), the Title VII text interpreted in *Smith* prohibits classifications "which *would deprive or tend to deprive* any individual of employment opportunities or *otherwise adversely affect* his status as an employee, because of such individual's age." § 623(a)(2) (emphasis added). That language directs our focus to the consequences of an action on the employee and thus permits disparate-impact liability. But the text of § 633a(a) directs our focus to the actor's intent and whether it involved discrimination.[10] And that focus on the actor's intent precludes disparate-impact liability.

---

[10] As the dissent notes, § 633a(a) does contain the word "affecting." But it uses it in a different way than § 623(a)(2). It is not the mere presence of the word "affects" that creates disparate-impact liability in § 623(a)(2); it's how it's used. In § 633a(a) the phrase "affecting employees" is an adjectival phrase modifying "all personnel actions." It describes the types of actions covered by the statutory prohibition. In contrast, § 623(a)(2) uses "affect" as the verb describing the impact of the age-based classification. So the clause "because of age" modifies "affects," thus reaching age-based effects of neutral employer actions. *See Smith*, 544 U.S. at 236 n.6 (noting that the language creates "an incongruity between" the employer's action and the employee's harm, such that "an employer who classifies his employees without respect to age may still be liable . . . if such classification adversely *affects the employee because of that employee's age*—the very definition of disparate impact." (emphasis added)). But in § 633a(a), "because of age" does not modify "affecting" but rather "discrimination" (*i.e.*, differential treatment), which must not be allowed to taint the employer's "actions." The difference goes to the heart of the difference (Continued)

16

The Supreme Court's analysis of § 633a(a) in *Babb* reinforces this conclusion. While *Babb* did not concern the existence of disparate-impact liability specifically, the Supreme Court did interpret the words of the statute, and that interpretation forecloses disparate-impact liability.

*Babb* explained that the term "personnel actions" includes "most employment-related *decisions*" and that § 633a(a) protects against decisions in which "age discrimination plays any part in the way a decision is made." 140 S. Ct. at 1173–74 (emphasis added). So, under *Babb*'s interpretation, the text of § 633a(a) looks to the motivation behind, rather than the effect of, the decision. *Id.* at 1173–74 ("Thus, 'free from any discrimination' describes how a personnel action must be 'made,' namely, in a way that is not tainted by differential treatment based on age. If age discrimination plays any part in the way a decision is made, then the decision is not made in a way that is untainted by such discrimination."). And yet the Supreme Court directs that disparate-impact liability applies only when the text focuses on the consequences of a decision, not on the actor's intent. *Cf. Tex. Dep't of Hous. & Cmty. Affairs*, 576 U.S. at 534 ("the consequences of an action rather than the actor's intent"); *Bd. of Educ. of City Sch. Dist. of N.Y. v. Harris*, 444 U.S. 130, 140–41 (1979) (same); *see also Smith,* 544 U.S. at 235–36 & n.6.[11]

---

between disparate-impact and disparate-treatment: whether we look to age-based *effects* or age-based *discrimination*.

[11] To the extent that the ADEA's federal-sector provision mirrors any part of the private-sector provision, *see Gomez-Perez*, 553 U.S. at 486–87, it more closely resembles § 623(a)(1), which focuses on the employer's actions and thus does not encompass disparate-impact liability, *Smith*, 544 U.S. at 236 n.6, than § 623(a)(2), which focuses on (Continued)

Having established that the statute places a condition on an employer's decisions, the rest of the statute establishes what that condition is:  Those decisions "shall be made free from any discrimination based on age."  If age-based animus even slightly "tainted" the employer's decision, then that decision was not "made free from any" age-based discrimination.  140 S. Ct. at 1173–74.[12]

The *Babb* Court read "discrimination" to "carr[y] its 'normal definition,' which is 'differential treatment.'"  *Id.* at 1173.  So under § 633a(a), the Court concluded, "age must be a but-for cause of discrimination—that is, of differential treatment."  *Id.*  "Differential treatment" directs the statute's focus to the employer's action, not the consequences of the

---

the effect on the employee and thus encompasses disparate-impact liability, *id.* at 235–36.  *Compare* § 633a(a) ("All personnel actions affecting [federal] employees or applicants for [federal] employment who are at least 40 years of age . . . *shall be made free from any discrimination* based on age." (emphasis added)), *with* 29 U.S.C. § 623(a)(1) ("It shall be unlawful for an employer . . . to *fail or refuse to hire or to discharge* any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." (emphasis added)), *and* § 623(a)(2) ("It shall be unlawful for an employer . . . to limit, segregate, or classify his employees in any way which would *deprive or tend to deprive* any individual of employment opportunities or *otherwise adversely affect* his status as an employee, because of such individual's age." (emphasis added)).

[12] The dissent stresses the word "any," taking it to mean "'one *or* another *taken at random*' or 'selected *without restriction*,'" and postulates that it shows Congressional intent to reach multiple *types* of "discrimination."  *See* Dissent at 6.  But *Babb* applied a different "standard dictionary definition" of "any" in this context:  "[s]ome, regardless of quantity or number."  140 S. Ct. at 1173 n.2 (quoting American Heritage Dictionary 59 (def. 2) (1969)).  So "any" is being used as a quantitative description of the amount of discrimination permitted (*i.e.*, none).  Under the Supreme Court's definition, the clause is equivalent to "free from any *amount* of discrimination," not "free from any *type* of discrimination," and so does not, as the dissent suggests, expand what qualifies as "discrimination" beyond its plain meaning—"differential treatment."

action on the employee, and requires intent. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 175 (2005) ("'Discrimination' is a term that covers a wide range of *intentional unequal treatment*."); *see also Puffer v. Allstate Ins.*, 675 F.3d 709, 716 (7th Cir. 2012). And disparate-impact liability is not a form of *intentional* discrimination or differential treatment. *See Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (contrasting "*intentional discrimination* (known as 'disparate treatment')" with "practices that are not intended to discriminate but in fact have a disproportionately *adverse effect* on minorities (known as 'disparate impact')").

Finally, the statute identifies which type of intentional differential treatment is not allowed: that which is "based on age." As *Babb* declares and our colleague in dissent acknowledges, this clause requires that age "be a but-for cause of discrimination—that is, of differential treatment." 140 S. Ct. at 1173; *see also* Dissent at 6. So, § 633a(a) is only implicated where an employer intended to treat otherwise identical employees differently because of their ages.

So in sum, the text of § 633a(a) requires that employment-related decisions be untainted by differential treatment of employees identical in all respects but age. This standard authorizes disparate-treatment claims, such as where an employer's age-based animus contributes to their decision to pass over an employee for promotion. *See, e.g.*, *Babb*, 140 S. Ct. 1168. But it does not encompass disparate-impact claims, where an employer adopts a policy that treats all employees the same, no matter how old they happen to be.

19

The statutory structure also supports this conclusion. *Smith* relied on the narrowing effect of the reasonable-factors defense to justify finding disparate-impact liability under the private-sector provision. 544 U.S. at 239 (plurality opinion). The Court noted that the defense reflected Congress's understanding that age often "has relevance to an individual's capacity to engage in certain types of employment." *Id*. at 240–41. So Congress would not prohibit every potential disparate impact based on age without providing a defense to protect legitimate actions. *Id*.; *see also Meacham v. Knolls Atomic Power Lab'y*, 554 U.S. 84, 97 (2008) (holding that the ADEA private-sector provision does not include a business-necessity defense but relies solely on the reasonable-factors defense). *Smith* reasoned that Congress's inclusion of the reasonable-factors defense as a limit reflects the intention to sweep broadly and include disparate-impact claims. *Smith*, 544 U.S. at 239 (plurality opinion).

Title VII's federal-sector provision also expressly incorporates a defense to disparate-impact claims—specifically, a business-necessity defense. *See* 42 § 2000e-2(k)(1)(A)(i) (including as part of the burden that the "respondent" can "demonstrate that the challenged practice is job-related for the position in question and consistent with business necessity"); § 2000e(n) (defining "respondent" in § 2000e-2(k) to include federal employers); *Rodriguez v. United States*, 852 F.3d 67, 77–78 (1st Cir. 2017) (explaining how the federal-sector provision is the same as the private-sector provision under Title VII, including disparate-impact); *Phillips v. Cohen*, 400 F.3d 388, 397–98 (6th Cir. 2005) (noting the business-necessity defense when applying § 2000e-2(k)(1)(A) to a federal employee); *Figueroa v. Pompeo*, 923 F.3d 1078, 1083–85 (D.C. Cir. 2019) (same).

20

Unlike a Title VII disparate-impact claim or a private-sector ADEA claim, however, the ADEA's federal-sector provision provides no business-necessity defense nor reasonable-factor defense.[13]  Indeed, it contains no defense at all.  Using *Smith*'s logic, the absence of the limiting defenses found in comparable provisions suggests that Congress did not intend to include a broad disparate-impact claim in the ADEA's federal-sector provision.

Dr. DiCocco finally points to the legal landscape to suggest that we should read the federal-sector provision as encompassing a disparate-impact cause of action.  As the Supreme Court has recognized, the federal-sector provision was "patterned 'directly after' Title VII's federal-sector discrimination ban."  *Gomez-Perez*, 553 U.S. at 487 (quoting *Lehman v. Nakshian*, 453 U.S. 156, 167 n.15 (1981)).  The Title VII provision expressly prohibits discrimination based on disparate impact.  *See* 42 U.S.C. § 2000e-2(k) (codifying the burden of proof for disparate-impact cases against "respondent[s]"); § 2000e(n) (defining "respondent" in § 2000e-2(k) to include federal employers).  And the Supreme Court has separately held that the ADEA's private-sector provision, in part, provides for disparate-impact liability.  *Smith*, 544 U.S. at 240 (plurality opinion).  But the legal landscape when the federal-sector provision was passed does not suggest that Congress intended the ADEA's federal-sector provision to include disparate-impact liability.

---

[13] The reasonable-factors defense, 29 U.S.C. § 623(f)(1), does not apply to cases brought under the federal-sector provision.  *See* 29 U.S.C. § 633a(f) ("Any personnel action of any department, agency, or other entity referred to in subsection (a) of this section shall not be subject to, or affected by, any provision of this chapter, other than the provisions of sections 626(d)(3) and 631(b) of this title and the provisions of this section.").

The ADEA's federal-sector provision was enacted in 1974, long before the 1991 amendments to Title VII codified disparate-impact liability for federal employers. Before those amendments, the Supreme Court had not considered whether Title VII's federal-sector provision permitted disparate-impact claims. *Cf. Griggs*, 401 U.S. at 426 n.1, 429–30 (explaining, in 1971, that the *private*-sector provisions of Title VII permit disparate-impact claims). The amendments "expanded the coverage of Title VII" to disparate-impact liability but did not make corresponding changes to the ADEA. *Smith*, 544 U.S. at 240. So because the Title VII amendments resolved the federal-sector disparate-impact question *after* the ADEA's federal-sector provision was enacted, we do not see how Congress could have incorporated their substance into the ADEA, especially when it expressly included disparate-impact language in Title VII but left the ADEA unaltered. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174 (2009) ("We cannot ignore Congress' decision to amend Title VII's relevant provisions but not make similar changes to the ADEA. When Congress amends one statutory provision but not another, it is presumed to have acted intentionally.").

To be sure, *Griggs*, which interpreted Title VII's private-sector provision to include disparate-impact liability, was decided three years before the ADEA federal-sector provision was enacted. But Title VII's private-sector provision is worded and structured differently than the ADEA's federal-sector provision. *See Gomez-Perez*, 553 U.S. at 474 (explaining that the language of § 633a(a) differs sharply from the language of § 623(a), which, as the Supreme Court explained in *Smith*, 554 U.S. at 236, is nearly identical to that of Title VII's private-sector provision). *Compare* 42 U.S.C. § 2000e-2(a) (Title VII

22

private-sector provision), *with* 29 U.S.C. § 633a(a) (ADEA federal-sector provision).  So Congress would not have had a "reason to expect" that the ADEA's federal-sector provision "would be interpreted 'in conformity' with" *Griggs*.  *Gomez-Perez*, 553 U.S. at 488 (quoting *Jackson*, 544 U.S. at 176).  So even though a Title VII disparate-impact case would normally be a "compelling" precedent in interpreting the ADEA, *Smith*, 544 U.S. at 234, *Griggs* does not control here. [14]

In conclusion, neither the legal background at enactment nor the statute's text and structure support allowing a disparate-impact liability claim under the federal-sector provision of the ADEA.  So we hold that Dr. DiCocco's disparate-impact claim is not cognizable under the ADEA's federal-sector provision.  And because the government's waiver of sovereign immunity is limited to claims by persons "aggrieved" under the section, her claim is not within the scope of that waiver.

---

[14] The dissent insists that we are bound by two pre-1991 cases in which the Fourth Circuit permitted Title VII disparate-impact claims against the federal government.  *See* Dissent at 16.  But neither decision analyzes whether the text of 42 U.S.C. § 2000e-16(a) permits disparate impact claims.  *See Wright v. Nat'l Archives & Records Serv.*, 609 F.2d 702 (4th Cir. 1979) (en banc); *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482 (4th Cir. 1981).  Instead, they simply assume that the claims are permitted.  *See Wright*, 609 F.2d at 711 (assuming private-sector precedent applied without acknowledging differences between the private-sector and government provisions); *Chisholm*, 665 F.2d at 497 (assuming, without discussion, that both disparate-impact and disparate-treatment claims were available).  And assumptions—particularly those that are unaddressed, concern a different statute, and conflict with subsequent Supreme Court decisions like *Smith*, *Texas Department of Housing and Community Affairs*, and *Babb*—are not holdings.  *See Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."); *see also Mays v. Sprinkle*, 992 F.3d 295, 302 n.4 (4th Cir. 2021).

*          *          *

The district court erred in dismissing Dr. DiCocco's complaint for lack of standing based on its analysis of the merits of her claim. She has sufficiently pleaded facts showing that she has Article III standing to raise her claims in federal court, even if those claims do not prevail on the merits. But the dismissal of her ADEA claim must be affirmed because the government's waiver of sovereign immunity does not cover disparate-impact claims. Though the government asks that we address the merits of her Title VII disparate-impact claim on appeal, we remand that claim for consideration first by the district court.[15] Accordingly, the district court's judgment is

AFFIRMED IN PART,
REVERSED IN PART,
AND REMANDED.

---

[15] The government contends that her Title VII claim fails because she cannot show an adverse employment action. *Cf. Aliotta v. Bair*, 614 F.3d 556, 566 (D.C. Cir. 2010) ("Under either a disparate treatment or disparate impact theory of discrimination, plaintiffs must show they suffered an adverse employment action."). Though Dr. DiCocco does not contest that a Title VII disparate-impact claim requires an adverse employment action, we decline to address that threshold question, which appears to be unanswered in our circuit and underdeveloped in other circuits.

FLOYD, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that Dr. Jane DiCocco possesses Article III standing to bring her disparate-impact claims under the Age Discrimination in Employment Act of 1967 (ADEA) and Title VII of the Civil Rights Act of 1964 (Title VII). I concur with Parts I and II.A of the majority's opinion, and I also concur with the majority's decision to remand Dr. DiCocco's disparate-impact claim under Title VII for substantive findings in the first instance. But rather than similarly remanding Dr. DiCocco's disparate-impact claim under the ADEA for findings in the first instance, the majority reaches its own debatable holding. Diverging from our sister circuits and overruling our prior precedents, the majority holds that the ADEA does not afford a disparate-impact cause of action for federal employees. In my view, the ADEA does not tolerate this holding under the traditional tools of statutory interpretation and our precedents. Therefore, I respectfully dissent with respect to Part II.B of the majority's opinion.

I.

Because Dr. DiCocco has standing to bring her suit, the first issue before the Court is whether the ADEA's federal-sector ban on age discrimination provides a cause of action for disparate-impact claims and whether the scope of the federal government's waiver of sovereign immunity includes such claims. Based upon the text of the ADEA, its history and structure, and Supreme Court precedent, I would hold that the ADEA permits disparate-impact claims against the federal government, and that the federal government has waived its sovereign immunity.

25

"[A] waiver of sovereign immunity must be 'unequivocally expressed' in statutory text." *Fed. Aviation Admin. v. Cooper*, 566 U.S. 284, 290 (2012) (citations omitted); *see also Lane v. Peña*, 518 U.S. 187, 192 (1996). If a statute's language contains ambiguities, those ambiguities must be construed in favor of sovereign immunity "so that the Government's consent to be sued is never enlarged beyond what a fair reading of the text requires . . . ." *Cooper*, 566 U.S. at 290 (internal citation omitted). When the scope of a waiver is at issue, statutory ambiguities are also construed in favor of the sovereign. *Id.* at 291. Congress need not use "magic words" to waive the federal government's sovereign immunity. *Id.* The only requirement is that "the scope of Congress' waiver be clearly discernable from the statutory text in light of traditional interpretive tools." *Id.* Our tools for statutory interpretation include: (1) statutory text; (2) statutory structure; (3) legislative history; (4) judicial interpretations; (5) related statutes; and (6) congressional purpose. *See Brown & Williamson Tobacco Corp. v. Food & Drug Admin.*, 153 F.3d 155, 162 (4th Cir. 1998); *United States v. Jackson*, 759 F.2d 342, 344 (4th Cir. 1985); *see also United States v. Bryant*, 949 F.3d 168, 174–75 (4th Cir. 2020). Deploying this arsenal, I first consider the types of claims within employment discrimination cases and then turn to the language, legislative history, related statutes, and judicial interpretations implicating the ADEA's federal-sector ban on age discrimination.

A.

In order to consider the import of the ADEA's statutory text, we must be familiar with the two distinct claims in employment discrimination law: disparate-treatment and

disparate-impact claims. A disparate-treatment claim arises "where an employer has 'treated [a] particular person less favorably than others because of' a protected trait." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (quoting *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 985–86 (1988)). If a claimant brings a disparate-treatment claim, they must establish that an employer possessed a "discriminatory intent or motive" for an adverse employment action. *Id.* Disparate-impact claims seek to remove "artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate . . . ." *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971). Essentially, disparate-impact claims attack "[employment] practices that are fair in form, but discriminatory in operation." *Id.*; *see also Bauer v. Lynch*, 812 F.3d 340, 349 n.10 (4th Cir. 2016) ("[D]isparate impact discrimination occurs when a facially neutral employment practice has a significantly discriminatory effect." (citing *Griggs*, 401 U.S. at 430)). Importantly, both claims are types of discrimination, but the former involves "intentional" discrimination, while the latter typically involves "unintentional" discrimination. *See Ricci*, 557 U.S. at 577; *see also Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003); *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993); *N.A.A.C.P v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 482 n.11 (3d Cir. 2011). Our precedents have recognized that these claims are both about and stem from one thing: discrimination. *See Burwell v. E. Air Lines, Inc.*, 633 F.2d 361, 369 (4th Cir. 1980). To determine whether disparate-impact claims are

27

cognizable under ADEA's federal-sector ban on age discrimination, I turn to the text of the statute.

When prohibiting age discrimination within the federal government's workforce, the ADEA declares: "*All personnel actions affecting employees . . . who are at least 40 years of age . . . shall be made free from any discrimination based on age.*"  29 U.S.C. § 633a(a) (emphasis added).  This language is unquestionably broad.  In terms of coverage, it first applies to "all personnel actions affecting employees . . . ." *Id.*  The statute uses "all" to describe "personnel actions."  *See id.*  When used as adjective to describe a noun, "all" means "the whole amount, quantity, or extent of"; "every member or individual component of"; and "every."  *All*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/all (last visited Sept. 8, 2021).  Although the ADEA does not define "personnel actions," the Supreme Court borrowed the term's definition from the Civil Service Reform Act of 1978 (CSA), a different statute governing federal employment.  *Babb v. Wilkie*, 140 S. Ct. 1168, 1172–73 (2020).  In doing so, the Court noted that the CSA "broadly defines a 'personnel action' to include most employment-related decisions, such as appointment, promotion, work assignment, compensation, and performance reviews."  *Id.* at 1173 (citing 5 § U.S.C. 2302(a)(2)(A)).  As a participle,[1] "affecting" means "[acting] upon (a person or a person's feelings) so as to cause a response" or "[being] the business or affair of."  *Affecting*, MERRIAM-WEBSTER,

---

[1] A participle is a verb functioning as an adjective.  *Participle*, Merriam-Webster, https://www.merriam-webster.com/dictionary/participle (last visited Oct. 19, 2021).

https://www.merriam-webster.com/thesaurus/affecting (last visited Sept. 8, 2021). Thus, when reading these definitions together, § 633a(a) covers "every" employment-related decision that "act[s] upon" an employee or concerns an employee's "affairs." But the textual inquiry must go further.

Given § 633a(a)'s expansive reach, it is imperative to consider what the statute protects federal employees against and when liability attaches to the federal government. "Under § 633a(a), personnel actions must be made 'free from' discrimination." *Babb*, 140 S. Ct. at 1173. The Supreme Court stated that "free from" requires personnel actions be "untainted" by "any discrimination." *Id.* "Any" requires an "*expansive meaning*" and is defined as "[s]ome, regardless of quantity or number." *Id.* at 1173 n.2 (emphasis added) (citations omitted). It also means "one or some indiscriminately of whatever kind," indicating "one or another *taken at random*" or "one selected *without restriction*." *Any*, MERRIAM-WEBSTER (emphasis added), https://www.merriam-webster.com/thesaurus/affecting (last visited Sept. 10, 2021). "Discrimination" means "differential treatment." *Babb*, 140 S. Ct. at 1173 (quoting *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005)). And lastly, "shall be made" imposes an affirmative duty on the federal government, requiring that personnel decisions are made without a "taint" of discrimination. *Id.* Accordingly, "every" employment-related decision by the federal government must be untainted by "*any*" differential treatment "based on age." *Id.* (emphasis added).

In *Babb v. Wilkie*, the Court construed § 633a(a)'s terms to solidify the causal requirement, which imposes liability on the federal government for *disparate-treatment*

29

claims. *Id.* at 1171. It emphasized that a close reading of the statutory text, including the relationship between the codified words, is what matters. *Id.* at 1173–74. Examining the text, the Court first reasoned "age must be a but-for cause of discrimination" because the phrase "based on age" modified the noun "discrimination." *Id.* at 1173. It then found "free from discrimination" was a phrase modifying the verb "made," thereby requiring personnel decisions be "untainted" by "differential treatment based on age." *Id.* at 1173–74. Although age must be a but-for cause of the discrimination alleged, *Babb* held that a claimant need not ultimately prove "but-for cause" to impose liability on a federal employer under § 633a(a). *Id.* at 1171, 1173–74 & n.3. Showing that a personnel decision is tainted by the consideration of age is sufficient for liability to attach. *Id.* at 1171.

Under *Babb*, § 633a(a)'s textual mandate is clear. The federal government is foreclosed from making personnel decisions where there is a taint of "differential treatment based on age." *Id.* at 1173–74. This requirement, as indicated by the statute's text, is not limited to a specific type of differential treatment. "Any" directly precedes and modifies "discrimination" as an adjective. *See* § 633a(a). Section 633a(a) thus outlaws "*any*" differential treatment, meaning the type of differential treatment is "one *or* another *taken at random*" or "selected *without restriction*." Although the majority indicates its task is to determine whether the phrase "any discrimination based on age" includes disparate-impact claims, it underestimates the meaning of "any." *See* Majority Op. 9, 16–19, & n.12. In this instance, "any" directly impacts the types of claims encompassed by § 633a(a) because Congress could have used a restrictive word to prohibit certain types of discrimination within the federal government but to encompass others. For example, Congress could have

30

placed "intentional" or "unintentional" before "discrimination," which would have thus limited § 633a(a)'s reach to either disparate-treatment or disparate-impact claims. But it did not. Congress instead put the word "any," which must be given an expansive meaning. *Babb*, 140 S. Ct. at 1173 n.2

Again, disparate-treatment and disparate-impact claims are both forms of discrimination. *See Raytheon Co.*, 540 U.S. at 52; *Biggins*, 507 U.S. at 609; *Burwell*, 633 F.2d at 369. In other words, they both fall under the umbrella of discrimination that the statute is meant to address. Section 633a(a) protects federal employees from experiencing "*any* discrimination," so the specific differential treatment one suffers is "taken at random" and "without restriction" under § 633a(a)'s terms. § 633a(a) (emphasis added). Thus, under this literal reading, "*any* discrimination" must include both disparate-treatment and disparate-impact claims because they are distinct types of discrimination, "taken at random" and "without restriction," that can be suffered by a federal employee.[2] *Id.* (emphasis added). This textual inquiry should end the matter.

---

[2] The majority theorizes that the Supreme Court's interpretation of "'any' is used as a quantitative description of the amount of discrimination permitted (*i.e.*, none)," making "free from any *amount* of discrimination" functionally equivalent to "free from any discrimination." Majority Op. 18 n.12. This does not aid the majority unless it believes that disparate-impact liability does not involve any amount of discrimination. In my view, disparate-impact claimants suffer some amount of discrimination because they are excluded by an employer's facially neutral policy and, therefore, are victims of discrimination. *See Connecticut v. Teal*, 457 U.S. 440, 455 (1982) ("Title VII does not permit *the victim* of a facially discriminatory policy to be told that he has not been wronged because other persons of his or her race or sex were hired. That answer is no more satisfactory when it is given to *victims of a policy that is facially neutral but practically discriminatory*." (emphasis added)); *see also Chrisner v. Complete Auto Transit, Inc.*, 645 F.2d 1251, 1257 (6th Cir. 1981) ("Disparate impact analysis is properly applied *where the* (Continued)

The opposite textual interpretation, which the majority adopts, contains a fatal flaw. When "*any* discrimination" is construed to foreclose disparate-impact claims and only permit disparate-treatment claims, then "any" imposes a "restriction" rather than, as its plain meaning would suggest, indicating "without restriction." This is so because, per the majority's reading, § 633a(a) is *limited* to prohibiting only one form of discrimination (disparate treatment) while allowing another form of discrimination (disparate impact) to go unchecked. Under this view, "any" is rendered to impose a "restriction," thereby changing the statutory language within § 633a(a). Thus, any reading that § 633a(a) *only* outlaws disparate treatment cuts against the Court's instruction to give "any" an expansive meaning. *Babb*, 140 S. Ct. at 1173; *see also Coosemans Specialties, Inc. v. Dep't of Agric.*, 482 F.3d 560, 564 (D.C. Cir. 2007) (observing that the use of "any" to modify verbs "contemplates a wide range of behavior"). No court possesses the authority to rewrite statutory language duly enacted by Congress. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 76 (1996); *La. Pub. Serv. Comm'n v. Fed. Commc'ns Comm'n*, 476 U.S. 355, 376 (1986).

The only qualification upon "*any* discrimination" is that it be "based on age." § 633a(a). "Based on age" simply requires age to be a but-for cause of the specific

---

*discrimination results* not from the decision to employ a challenged practice, but from its effect." (emphasis added)). Finding that disparate-impact claims involve some amount of discrimination fully aligns with the Court's precedents because such claims would be null otherwise. *Cf. Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1345 (2015) ("We note that employment discrimination law also creates with is called a 'disparate-impact' claim.").

discriminatory policy or treatment at issue, not the ultimate employment decision.[3] *Babb*, 140 S. Ct. at 1173–74. Since it addresses the substantive merits of a claim, but-for cause's existence is irrelevant to the threshold question of whether a specific cause of action even exists under § 633a(a). *See Nw. Airlines, Inc. v. Transp. Workers Union of Am.*, 451 U.S. 77, 88 n.20 (1981) ("Because we conclude no right to contribution exists under either the statute or the federal common law, we need not decide whether the elements of a contribution claim have been established in this case."); *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 465 n.13 (1974) ("Since we hold that no right of action exists, questions of standing and jurisdiction became immaterial.").

The majority insists *Babb* "looks to the motivation behind, rather the effect of, the decision." Majority Op. at 17. But *Babb* "looks" to no such thing. *Babb* only addresses the appropriate causal standard for imposing liability on the federal government in *disparate-treatment* cases. 140 S. Ct. at 1171 ("We are asked to decide whether [§ 633a(a)] *imposes liability* only when age is a 'but-for cause' of the personnel action in question."

---

[3] In the disparate-impact context, causation is typically demonstrated when a claimant shows a "specific or particular employment practice that has *created the disparate impact* under attack." *Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 657 (1989) (emphasis added), *superseded on other grounds by statute*, 42 U.S.C. § 2000e-2(k), *as recognized in Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 542 (2015). Our Court has observed disparate-impact claimants must "'demonstrate that the disparity they complain of is the result of one or more of the [] practices that they are attacking . . . , *specifically showing that each challenged practice has a significantly disparate impact*' on the protected class." *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 425 (4th Cir. 2018) (emphasis added) (quoting *Wards Cove*, 490 U.S. at 657); *see also Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 266 (4th Cir. 2005).

33

(emphasis added)).  As conceded by my fine colleagues in the majority, *Babb* has nothing to say about disparate-impact claims, and the decision does not even include the word "effect" within its reasoning.[4]  *See id.* at 1171–78.  Moreover, Justice Sotomayor, joined by Justice Ginsburg observed that *Babb* "does not foreclose § 633a claims arising from discriminatory processes." 140 S. Ct. at 1178 (Sotomayor, J., concurring).  Thus, *Babb* does not address the essential question here: Does § 633a(a)'s express language, which requires the federal government to make personnel decisions untainted by "*any discrimination* based on age," encompass disparate-impact claims?

In my view, disparate-treatment and disparate-impact claims are both contemplated by § 633a(a)'s expansive use of and proscription on "any discrimination."  *See Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1737 (2020) ("[T]he limits of the drafters' imagination supply no reason to ignore the law's demands.").  And the only qualification for proving a disparate-impact claim is that it be "based on age," mandating that a disparate-impact claimant show a causal relationship between the discriminatory treatment and age.

---

[4] After suggesting "'differential treatment' directs the statute's focus" to a federal employer's actions, the majority posits that because § 633a(a) "protects against decisions in which 'age discrimination plays any part in the way a decision is made,'" § 633a(a) only looks to the "motivation, rather than the effect of," an employment-related decision. Majority Op. at 17–18 (citations omitted).  I disagree.  First, under the majority's view, "differential treatment" only concerns intentional discrimination, but binding precedent indicates that, regardless of intentionality and no matter the form it takes, discrimination is discrimination. *See Raytheon Co.*, 540 U.S. at 52; *Biggins*, 507 U.S. at 609; *Burwell*, 633 F.2d at 369.  Second, to suggest a federal employer's express *adoption or employ* of a neutral policy with a discriminatory effect does not involve a decision by that employer simply strains credulity. *Watson*, 487 U.S. at 990 ("[A] facially neutral practice, *adopted without discriminatory intent*, may have effects that are *indistinguishable* from intentionally discriminatory practices." (emphasis added)).

34

Although this textual inquiry alone dictates the outcome here, our other tools of statutory interpretation further establish that § 633a(a) encompasses disparate-impact claims.

## B.

Section 633a(a)'s inclusion of disparate-impact claims is further supported by § 633a(a)'s intertwined history with and similarity to Title VII's federal-sector ban on employment discrimination. As such, historical background concerning the ADEA and Title VII is warranted, as it reveals how the majority is overruling our precedents construing Title VII. *Smith v. City of Jackson*, 544 U.S. 228, 233–34 (2005) (observing it is appropriate to presume the text within the ADEA and Title VII should have the same meaning because of they were enacted "shortly after the other").

Title VII prohibits private employers from engaging discriminatory practices because of an employee's race, color, religion, sex, or national origin. Civil Rights Act of 1964, Pub. L. No. 88-352, § 703, 78 Stat. 241, 255 (1964) (codified at 42 U.S.C. § 2000e-2(a)). Importantly, at the time of its enactment, Title VII only applied to private employers and did not contain any provisions prohibiting the federal government from engaging in employment discrimination. § 701(b), 78 Stat. at 253 (codified at 42 U.S.C. § 2000e(b)). As part of its new law, Congress instructed the Secretary of Labor to formally study age discrimination and provide "recommendations for legislation to prevent arbitrary discrimination because of age . . . ." § 715, 78 Stat. at 265. After the Secretary of Labor reported back, Congress passed the ADEA in 1967, concluding "older workers find themselves disadvantaged in their efforts to retain employment, and especially to regain

35

employment when displaced from jobs . . . ." Age Discrimination in Employment Act of 1967, Pub. L. No. 90-202, § 2(a)(1), 81 Stat. 602, 602 (1967) (codified at 29 U.S.C. § 621(a)(1)). As codified into law, Congress passed the ADEA with the express purposes to: (1) "promote employment of older persons based on their ability rather than their age"; (2) "prohibit *arbitrary age discrimination* in employment"; and (3) "help employers and workers find ways of meeting problems *arising from the impact of age on employment*." § 2(b), 81 Stat. at 602 (emphasis added) (codified at 29 U.S.C. § 621(b)). Similar to Title VII, the ADEA only applied to private employers and not the federal government. § 11(b), 81 Stat. at 605 (codified at 29 U.S.C. § 621(b)). Thus, both statutes only outlawed employment discrimination in the private sphere, albeit on different protected traits, but neither applied to the federal government.

Leap forward a few years. In 1971, the Supreme Court handed down *Griggs v. Duke Power*, which held that Title VII recognized disparate-impact claims because it "proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation." 401 U.S. at 431. As a statutory basis for its holding, the Court specifically cited 42 U.S.C. § 2000e-2(a)(2), which prohibits private employers from limiting, segregating, or classifying their employees "*in any way* which would deprive or tend to deprive any individual of employment opportunities *or otherwise adversely affect* his status as an employee" because of race, color, religion, sex, or national origin. *Id.* at 426 n.1 (emphasis added). The *Griggs* Court further reasoned that Congress aimed to remove "artificial, *arbitrary*, and unnecessary barriers to employment when the barriers

36

operate invidiously on the basis of racial or *other impermissible classification.*" *Id.* at 431 (emphasis added).

A year later, Congress amended Title VII by passing the Equal Employment Opportunity Act of 1972 and extending Title VII's prohibitions to the federal government. Equal Employment Opportunity Act of 1972, Pub. L. No. 92-261, § 11, 86 Stat. 103, 111 (1972) (now codified at 42 U.S.C. § 2000e-16(a)). Title VII's federal-sector ban reads: "All personnel actions affecting employees or applicants for employment . . . in executive agencies as defined in section 105 of Title 5 . . . shall be made free from *any discrimination* based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a) (emphasis added). Two years later, Congress enacted the Fair Labor Standards Amendments of 1974, codifying § 633a(a) of the ADEA. Fair Labor Standards Amendments of 1974, Pub. L. No. 93-259, § 28(b)(2), 88 Stat. 55, 74–75 (1974) (now codified at 29 U.S.C. § 633a(a)). With the exception of the protected characteristics, the language of Congress's federal ban on age discrimination exactly mirrors Title VII's federal ban and reads: "All personnel actions affecting employees or applicants for employment . . . in executive agencies as defined in section 105 of Title 5 . . . shall be made free from *any discrimination* based on age." § 633a(a) (emphasis added).

This legislative history supports the existence of disparate-impact claims under § 633a(a). It first shows Congress originally passed the ADEA to prohibit "arbitrary age discrimination" and urge employers and employees to find solutions to issues "*arising from the impact* of age on employment." 29 U.S.C. § 621(b) (emphasis added). Secondly, Congress decided to borrow the exact same statutory language from Title VII when it

37

banned age discrimination within the federal government under the ADEA.  *Compare* 42 U.S.C. § 2000e-16(a), *with* 29 U.S.C. § 633a(a).  And lastly, when enacting its federal discrimination bans based on race, color, religion, sex, and national origin in 1972, followed by age in 1974, Congress did so *after* the Supreme Court handed down *Griggs* in 1971, a precedent of "compelling importance."  *Smith*, 544 U.S. at 234.  Our Court must "assume that Congress is aware of existing law when it passes legislation."  *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) (citing *Cannon v. Univ. of Chi.*, 441 U.S. 677, 696–97 (1979)); *see also N. Start Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995).  *Griggs* relies on restrictive statutory language to hold disparate-impact claims are actionable under Title VII's private-sector ban on employment discrimination.  After *Griggs*, Congress knowingly enacted federal bans on employment discrimination, including under the ADEA, using statutory language broader than the more restrictive language authorizing disparate-impact claims in *Griggs*.  This action strongly suggests that Congress sought to prohibit the very same conduct, if not more, than that addressed in *Griggs*.  As a matter of statutory interpretation, Congress's deliberate choice to use broader language than that before the *Griggs* Court cannot go unnoticed, and it compels an equally broad application of § 633a(a).  *See PGA Tour, Inc. v. Martin*, 532 U.S. 661, 689 (2001); *Canadian Aviator v. United States*, 324 U.S. 215, 222–23 (1945); *Nat'l Coal. For Students with Disabilities Educ. & Legal Def. Fund v. Allen*, 152 F.3d 283, 290 (4th Cir. 1998).

But the historical inquiry is not finished.  Over a decade after § 633a(a)'s enactment, Congress passed the Civil Rights Act of 1991 (CRA of 1991) and codified disparate-impact claims against the federal government into Title VII.  Civil Rights Act of 1991, Pub. L. No.

38

102-166, §§ 104–05, 105 Stat. 1071, 1074–75 (1991) (codified at 42 U.S.C. §§ 2000e(n), 2000e-2(k)).  Because the CRA of 1991 codified disparate-impact liability against the federal government only in Title VII, the majority "do[es] not see how Congress could have intended to incorporate their substance into the ADEA . . . ."  Majority Op. at 22 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174 (2009)).  But when construing federal statutes, our Court "observe[s] that '[i]naction . . . is a notoriously poor indication of congressional intent.'" *Minor v. Bostwick Labs., Inc.*, 669 F.3d 428, 436 (2012) (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 440 (1988) (Brennan, J., dissenting)); *see also Zuber v. Allen*, 396 U.S. 168, 185 (1969) ("Legislative silence is a poor beacon to follow in discerning the proper statutory route.").  In this instance, it is unsurprising that Congress left the ADEA unaltered because the CRA of 1991 was expressly enacted to partially supersede a Supreme Court decision weakening disparate-impact suits under Title VII, *Wards Cove Packing Co., Inc. v. Antonio*, 490 U.S. 642 (1989).  §§ 2–3, 105 Stat. at 1071.  In my view, the majority places too much emphasis on Congress's decision to legislate against the Supreme Court's interpretation of disparate-impact claims under Title VII.  Indeed, in *Smith v. City of Jackson*, the Court *did not* construe the CRA of 1991 as precluding the existence of disparate-impact liability under the ADEA's private-sector ban.  544 U.S. at 240.  Quite the opposite.  The Court concluded that the CRA of 1991 only alters disparate-impact liability under Title VII, and "*Wards Cove*'s pre–1991 interpretation of Title VII's identical language remains applicable to the ADEA." *Id.*  Disparate-impact liability under the ADEA's federal-ban on discrimination is simply narrower than disparate-impact liability authorized by the CRA of 1991.  Thus, I disagree that the CRA

39

of 1991 necessarily forecloses the existence of disparate-impact liability under § 633a(a) because Congress was responding to an entirely different issue raised by a specific Supreme Court case.

## C.

Given this rich history, judicial interpretations of 42 U.S.C. § 2000e-16(a) *before* the enactment of the CRA of 1991 shed light into the existence of disparate-impact claims under § 633a(a).  As noted above, the language of Title VII's federal-sector ban on discrimination is virtually the same as that in § 633a(a) and thus carries import for a statutory analysis.  *See Wachovia Bank v. Schmidt*, 546 U.S. 303, 305 (2006) ("under the *in pari materia* canon, statutes addressing the same subject matter generally should be read 'as if they were one law'" (quoting *Erlenbaugh v. United States*, 409 U.S. 239, 243 (1972))).  Even though the Supreme Court did not speak to the issue, our Court has permitted disparate-impact claims against the federal government under § 2000e-16(a) and analyzed those claims on the merits prior to the CRA of 1991.  *See Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 488, 496–97 (4th Cir. 1981); *Wright v. Nat'l Archives & Records Serv.*, 609 F.2d 702, 705, 711–13 (4th Cir. 1979).  Our sister circuits did the same.  *See Palmer v. Shultz*, 815 F.2d 84, 89–90, 114–16 (D.C. Cir. 1987); *Shidaker v. Tisch*, 833 F.2d 627, 629–32 (7th Cir. 1986); *Maddox v. Claytor*, 764 F.2d 1539, 1541, 1548–49 (11th Cir. 1985); *Mortensen v. Callaway*, 672 F.2d 822, 822, 824 (10th Cir. 1982); *Coopersmith v. Roudebush*, 517 F.2d 818, 821 n.7 (D.C. Cir. 1975).

If § 2000e-16(a) authorized disparate-impact claims *before* they were codified into Title VII, our precedents mandate the same for § 633a(a) since the statutory language is identical. *Schmidt*, 546 U.S. at 505. But this mandate does not faze the majority. Instead, the majority implicitly overrules our pre-1991 precedents analyzing disparate-impact claims against the federal government because, under its holding today, those cases could have never been brought against the federal government in the first place and their underlying assumptions are deemed to have no precedential effect *See* Majority Op. at 23 n.15. In my view, only the Supreme Court and an en banc panel of our Court can formally overrule the decisions that the majority casts aside so easily. *See United States v. Chong*, 285 F.3d 343, 246–47 (4th Cir. 2002) ("It is well settled that 'a panel of this court cannot overrule, *explicitly or implicitly*, the precedent set by a prior panel of this court. Only the Supreme Court or this court sitting en banc can do that.'" (emphasis added) (quoting *Mentavlos v. Anderson*, 249 F.3d 301, 312 n.4 (4th Cir. 2001)).

D.

The Supreme Court's precedents, and those of our sister circuits, provide further support for a disparate-impact theory under § 633a(a), and do not save the majority's tenuous holding.

First, in *Smith*, the Court was tasked with determining whether the ADEA's private-sector ban on discrimination authorized disparate-impact claims. 544 U.S. at 232–33. In relevant part, the private-sector ban on discrimination prohibits employers from limiting, segregating, or classifying their employees "*in any way*" which would deprive or tend to

41

deprive any individual of employment opportunities *or otherwise adversely affect* his status as an employee" because of age.  29 U.S.C. § 623(a)(2) (emphasis added).  The *Smith* Court emphasized the statute's prohibition on employment actions that "*otherwise adversely affect*" employees, reasoning that the text thus "focuses on the *effects* of the action on the employee rather than the motivation for the action of the employer."  544 U.S. at 235–36 (emphasis in original) (citations omitted).  The Court observed that the ADEA's statutory language was "identical" to the statutory language construed by the *Griggs* Court, which "strongly suggests that a disparate-impact theory should be cognizable under the ADEA." *Id.* at 233–36.  In the addition to relying on the ADEA's text, *Smith* also looked to the ADEA's structure and the Equal Opportunity Employment Commission's (EEOC) regulations when holding that § 623(a)(2) authorized a narrow version of disparate-impact claims.  *Id.* at 233–40.

Certainly, § 633a(a) does not precisely mirror § 623(a)(2).  *Compare* § 633a(a), *with* § 623(a)(2).  Section 633a(a) is broader than § 623(a)(2) because it is not limited to a specific list of prohibited practices.  *See* §§ 623(a)(2), 633a(a); *see also Gomez-Perez v. Potter*, 553 U.S. 474, 486–88 (2008).  Nevertheless, in a similar vein to § 623(a)(2), § 633a(a)'s prohibition reaches discriminatory employment actions "*affecting* employees."[5]  Under *Smith*, the use of "affecting" within both statutes suggests

---

[5] The majority distinguishes § 633a(a) from § 623(a)(2) by opining that the former uses "affecting" as an adjectival phrase, while the latter uses "affect" as a verb.  Majority Op. 17 n.11.  Again, § 633a(a) states that "[a]ll personnel actions *affecting employees* or *applicants for employment* . . . shall be made free from any discrimination based on age."  Section 623(a)(2) provides that "[i]t shall be unlawful for an employer—to limit, segregate, (Continued)

that they similarly focus on *effects* to some extent and encompass disparate-impact claims. But again, this textual similarity does not seem to bother the majority because it instead places emphasis on inapposite statutory words, including the word "actions," to reach its desired conclusion about § 633a(a). *See* Majority Op. at 16.

The majority also relies upon *Smith* to hold that disparate-impact liability cannot exist under § 633a(a) because the statute does not structurally contain any limiting defenses to a disparate-impact suit in contrast to the ADEA's private-sector ban and Title VII's federal-sector ban on disparate impact.[6] Majority Op. at 18–19. That position is implicitly

or classify his employees in any way which would . . . otherwise *adversely affect [one's] status as an employee*, because of such individual's age . . . ." The majority's grammatical observations are correct, but they do not preclude disparate-impact liability. The central question is, what employer-related conduct does the statute address or influence? Section 633a(a) applies to "[a]ll personnel actions affecting employees," and only those personnel actions not "affecting employees" are free from scrutiny. Section 623(a)(2) bans employer actions that "adversely affect" one's status as an employee. Importantly, "employees" is the object within § 633a(a)'s adjectival phrase, and "employee" is likewise the object of § 623(a)(2)'s verb. In my view, both statutes functionally encompass disparate-impact claims but employ different means to do so—§ 633a(a) seeks to ensure that "[a]ll personnel actions affecting employees" are untainted by discrimination, and § 623(a)(2) prohibits employers from classifying employees using methods that would "adversely affect" their employment status. The adjective and verb distinctions miss the forest for the trees.

[6] The majority acknowledges there are Equal Opportunity Commission appeals recognizing disparate-impact claims under § 633a(a). *See* Majority Op. at 14 n.9 (citing *Carpenter v. Peters*, EEOC DOC 0120065151, 2007 WL 632984, at *2 (EEOC Feb. 23, 2007); *Witkowsky v. Babbitt*, EEOC DOC 03970122, 1998 WL 563824, at *3 (EEOC Jan. 30, 1998)). In addition to those appeals, there are EEOC regulations implicating the existence of disparate-impact claims under the ADEA's federal-sector ban. *See* 29 C.F.R. § 1614.103(c) (stating that complaints of discrimination within the federal government extend to "*all employment policies or practices affecting employees or applicants for employment*" (emphasis added)); § 1614.204(c) (stating that a class complaint must "identify *the policy or practice adversely affecting* the class" (emphasis added)). The *Smith* Court found it significant that the EEOC's regulations "authorize relief on a disparate-
(Continued)

43

rejected by *Babb*. The *Babb* Court did not find it anomalous that Congress chose to hold the federal government to a "higher standard" in comparison to other employers. 140 S. Ct. at 1177. And it highlighted Congress's decision to provide a completely different statutory scheme to the federal government under § 633a(a). *Id.* This Court is dealing with an entirely distinct statutory structure as noted in *Babb*. Moreover, regardless of whether a claim is for disparate treatment or disparate impact, § 633a(a) includes no codified defenses.[7] This is simply a distinction without a difference. Notwithstanding these observations, numerous defenses remain available to the federal government, including those embodied by judicial precedents before the CRA of 1991. *See id.* at 240; *Wards Cove*, 490 U.S. at 658–59.

Secondly, in *Gomez-Perez v. Potter*, the Court was tasked with determining whether § 633a(a)'s text includes a cause of action for retaliation. 553 U.S. at 479. Relying on its prior precedents construing statutory language similar to § 633a(a), the Court held that § 633a(a) prohibited retaliation because "[t]he statutory language at issue . . . [was]

impact theory," despite "not mentioning disparate impact by name." 544 U.S. at 239–40. Although the majority views the EEOC's federal-sector regulations as failing to authorize disparate-impact claims, I respectfully disagree. The federal-sector regulations plainly target the federal government's policies and practices, which is precisely what claimants must challenge to impose disparate-impact liability on an employer. *Raytheon Co.*, 540 U.S. at 52; *see also Reynolds v. Barrett*, 685 F.3d 195, 201 (2d Cir. 2012); *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006). Unlike the majority, I would ascribe some weight to the EEOC's position.

[7] Prior to the 1991 CRA, there were similarly no codified defenses to Title VII's federal-sector ban on discrimination, and disparate-impact claims were nevertheless permitted. *See* 42 U.S.C. § 2000e-16.

not materially different" from the that within its other precedents authorizing retaliation claims. *Id.* at 481 (citing *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229 (1969); *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005)). It further noted that the ADEA's federal-sector ban is a "broad prohibition" on discrimination. *Id.* at 487. Most importantly, the Court held that § 633a(c) waived the federal government's sovereign immunity from retaliation claims because it directly applies to claims under § 633a(a), and that there is no requirement for § 633a(a) to "surmount the same high hurdle" for waiving sovereign immunity. *Id.* at 491. Even if § 633a(a) was required to "surmount the same high hurdle" to waive the federal government's sovereign immunity, the Court held that the statute already provided the "requisite clarity" to do so. *Id.* In this final respect, *Gomez-Perez* does not assist the majority. Under *Gomez-Perez*, § 633a(c) is the emphatic waiver of the federal government's sovereign immunity, not § 633a(a), as the majority seems to imply.

Finally, although the Supreme Court has not addressed the precise question before us, several of our sister circuits recognize the possibility of disparate-impact claims under § 633a(a) if they are well pled.[8] *See Lujan v. Walters*, 813 F.2d 1051, 1052, 1057–58 (10th

---

[8] Federal district courts without appellate guidance are split about the existence of disparate-impact claims under § 633a(a). *Compare Anderson v. Duncan*, 20 F. Supp. 3d 42, 62–63 (D.D.C. 2013) (concluding disparate-impact claims are not cognizable under § 633a(a)), *and Allard v. Holder*, 840 F. Supp. 2d 269, 278–79 (D.D.C. 2012) (same), *with Karpe v. Chao*, 416 F. Supp. 3d 1021, 1025–28 (S.D. Cal. 2019) (holding that disparate-impact claims are cognizable under § 633a(a)), *and Breen v. Peters*, 474 F. Supp. 2d 1, 6–7 (D.D.C. 2007) (same), *and Lagerstrom v. Mineta*, 408 F. Supp. 2d 1207, 1211–13 (D. Kan. 2006) (same).

Cir. 1987); *Palmer v. United States*, 794 F.2d 534, 536–37 (9th Cir. 1986). Tellingly, my colleagues do not cite to any federal circuits supporting its holding. Majority Op. at 15. Instead, they create a circuit split. *See Elhady v. Kable*, 993 F.3d 208, 213 (4th Cir. 2021) ("We find these decisions persuasive and decline the invitation to create a circuit split."); *see also United States v. Hashime*, 722 F.3d 572, 573 (4th Cir. 2013) (Gregory, J., concurring in denial of en banc) ("Our precedent has had the effect of creating an oft-dreaded circuit split." (citations omitted)). I would avoid both the majority's creation of a circuit split and rebuke of our prior precedents.


E.

In sum, the majority ignores the broad scope of the ADEA's federal-sector ban on age discrimination. *See* Majority Op. at 10. The ADEA's federal-sector ban is textually clear, and when viewed alongside its history, purpose, structure, and other employment-related statutes, it compels the conclusion that § 633a(a) prohibits employment practices "fair in form, but discriminatory in operation." *Griggs*, 401 U.S. at 431. As such, I would hold that the ADEA's federal-sector prohibition on age discrimination imposes liability for disparate impact, and the federal government has unquestionably waived its sovereign immunity for disparate-impact claims. *Babb*, 140 S. Ct. at 1176–77; *Gomez-Perez*, 553 U.S. at 490–91.

46

II.

Judicial decisions have consequences.  Today, the majority officially sanctions the federal government's ability to utilize employment policies and practices that adversely impact older workers.  This result is not supported by the text, history, structure, or purposes of the ADEA.  And it does not honor the precedents from our Court and, more importantly, the Supreme Court.  I respectfully dissent in part and would remand Dr. DiCocco's disparate-impact claim under the ADEA for additional proceedings.