**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-1059

EILEEN CHOLLET, on behalf of C.M., a minor; DENNIS MA, on behalf of C.M., a minor; MERYEM GHAZAL, on behalf of P.G., a minor; RICHARD GHAZAL, on behalf of P.G., a minor; GUADALUPE WILLIAMSON, on behalf of T.W., a minor; TIMOTHY WILLIAMSON, on behalf of T.W., a minor,

                    Plaintiffs – Appellants,

          v.

DR. SCOTT BRABRAND, in his role as Superintendent, Fairfax County Public Schools,

                    Defendant – Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Anthony J. Trenga, Senior District Judge.  (1:21-cv-00987-AJT-JFA)

Argued:  October 30, 2024                                Decided:  May 19, 2025

Before WYNN, HARRIS, and HEYTENS, Circuit Judges.

Affirmed by published opinion.  Judge Harris wrote the opinion, in which Judge Wynn and Judge Heytens joined.

**ARGUED:**  George Millington Clarke, III, BAKER MCKENZIE LLP, Washington, D.C., for Appellants.  John F. Cafferky, BLANKINGSHIP & KEITH, PC, Fairfax, Virginia, for Appellee.  **ON BRIEF:**  James M. Lucas, Dallas, Texas, Christina M. Norman, BAKER MCKENZIE LLP, Chicago, Illinois, for Appellants.  Ian J. McElhaney, BLANKINGSHIP

& KEITH, PC, Fairfax, Virginia, for Appellee.

PAMELA HARRIS, Circuit Judge:

The plaintiffs in this case are the parents of children with special needs who attend public school in Fairfax County, Virginia. They allege that the transition to remote learning during the COVID-19 pandemic constituted an unconstitutional "taking" of what they see as their children's Fifth Amendment property interest in public education. The district court rejected this argument and granted the defendant's motion to dismiss for failure to state a claim. We agree and affirm the judgment of the district court.

## I.

Plaintiffs Eileen Chollet, Dennis Ma, Meryem Ghazal, Richard Ghazal, Guadalupe Williamson, and Timothy Williamson are the parents of children with special needs who attend the Fairfax County Public Schools ("FCPS") in Virginia. Pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, FCPS provides the plaintiffs' children with special education services based on Individualized Education Programs. Between March 2020 and February 2021, FCPS – like many school districts – responded to the COVID-19 pandemic by switching to a virtual learning model. The plaintiffs believe that FCPS's use of remote instruction was inconsistent with their children's individualized needs and caused them to fall behind.

To address these concerns, the plaintiffs filed suit under 42 U.S.C. § 1983 against Dr. Scott Brabrand, in his former role as Superintendent of FCPS, alleging an unconstitutional "taking" of their children's purported Fifth Amendment property interest in a public education. Virginia law, the parents alleged, establishes a fundamental right to

3

a public education.  And because that right is a protected property interest under the Fourteenth Amendment's Due Process Clause, they argued, it is also private property subject to the Takings Clause.

The district court dismissed the plaintiffs' complaint for failure to state a claim under Rule 12(b)(6).  *See Chollet v. Brabrand*, No. 1:21-cv-00987-AJT-JFA (E.D. Va. Dec. 14, 2023).[1]   In a thoroughly reasoned opinion, the court explained that "[t]he Constitution protects interests in property through various clauses."  J.A. 229.  Under the Due Process Clause of the Fourteenth Amendment, a "right to a public education [] recognized and protected by state law" is a protected property interest.  J.A. 228 (citing *Goss v. Lopez*, 419 U.S. 565, 573 (1975)).  The court recognized that Virginia law establishes a fundamental right to public education, and agreed with the plaintiffs that this right "likely qualifies as property for the purposes of the Due Process Clause."  *Id.*

But it "does not necessarily follow," the district court concluded, that the Virginia right to education "likewise qualifies" as private property under the Takings Clause.  *Id.* Instead, "federal courts have long interpreted the property interests protected by the

---

[1] The district court had previously dismissed the plaintiffs' complaint for failure to exhaust administrative remedies under the IDEA.  *Chollet v. Brabrand*, No. 1:21-00987-AJT-JFA, 2021 WL 6333049, at *3 (E.D. Va. Nov. 29, 2021).  After the court's ruling, the Supreme Court clarified the scope of the IDEA's exhaustion requirement, *see Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142 (2023), and we vacated and remanded for the district court to consider that new precedent.  *See Chollet v. Brabrand*, No. 22-1005, 2023 WL 5317961, at *1–2 (4th Cir. Aug. 18, 2023).  In the decision now on review, the district court concluded that the plaintiffs were not required to exhaust their administrative IDEA remedies and proceeded to reach the merits of their Takings Clause claim.  The court's holding as to exhaustion is not challenged on appeal.

4

Takings Clause as far narrower than property interests generally, including those protected by the Due Process Clause." J.A. 229; *id.* at 229–30 & n.9 (collecting cases). More specifically, goods or services provided by the government – like public education – are often treated as "property" or "property interests" under the Due Process Clause, but are not typically treated as private property for purposes of the Takings Clause.

The district court then considered the nature of the right to public education in Virginia. Unlike private property protected by the Takings Clause, the court found, the right to public education is subject to regulation or revision by the Virginia government, which retains significant authority to alter public education at its discretion. Further, the right to public education in Virginia cannot be bought or sold, in contrast to other property interests. Accordingly, the district court concluded that the right to public education, as alleged by the plaintiffs, is not private property under the Takings Clause and dismissed the complaint.

The plaintiffs timely appealed.

## II.

We review de novo a district court's dismissal of a complaint under Rule 12(b)(6). *Riddick v. Barber*, 109 F.4th 639, 645 (4th Cir. 2024). We agree with the district court that the plaintiffs have not stated a plausible claim for compensation under the Takings Clause and we therefore affirm its judgment.

5

As the district court explained, "property interests" that trigger Due Process Clause protections and "private property" under the Takings Clause are two different things. A "legitimate claim[] of entitlement" to a government benefit may give rise to a "property interest" under the Fourteenth Amendment's Due Process Clause. *See Goss*, 419 U.S. at 573. That Clause offers procedural protections for such property interests, ensuring that they are not withdrawn "without adherence to the [required] minimum procedures." *Id.* at 574. The Takings Clause, meanwhile, applies in a narrower set of circumstances: only to "private property," and only when that property is "taken" by the government for "public use." U.S. Const. amend. V ("[N]or shall private property be taken for public use, without just compensation."). But when it does apply, it provides a substantive remedy in the form of just compensation, which "must generally consist of the total value of the property when taken, plus interest from that time." *Knick v. Twp. of Scott*, 588 U.S. 180, 190 (2019).

The plaintiffs' argument starts with the Due Process Clause. As the district court recognized, the right to a public education is protected in the Commonwealth of Virginia under both the Virginia Constitution and the Code of Virginia. *See* J.A. 226 (citing Va. Const. art. VIII, § 1; Va. Code §§ 22.1–214(A), 22.1–215). Indeed, the Supreme Court of Virginia has held that "education is a fundamental right" under its state constitution. *Scott v. Commonwealth*, 443 S.E.2d 138, 142 (Va. 1994). And in *Goss v. Lopez*, the Supreme Court ruled that a student's "legitimate entitlement to a public education [is] a property interest" under the Due Process Clause. 419 U.S. at 574. Put that together, and we agree with the district court that the plaintiffs' children may well have the kind of entitlement to a public education that qualifies as a Due Process Clause "property interest." J.A. 228; *see*

6

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) (Due Process Clause property interests are created and defined by "an independent source such as state law").

According to the plaintiffs, this should end the matter. In their view, because their children's right to public education is a protected property interest under the Due Process Clause, it must also fall within the ambit of the Takings Clause. This is the leap in logic that the district court rejected, and we, too, are unpersuaded.

Neither *Goss* nor any other case dealing with public education has suggested, let alone held, that a student's protected property interest in public education constitutes "private property" for which compensation might be owed under the Takings Clause. *Goss* itself established only that an interest in public education, where established by state law, is protected by the Due Process Clause against deprivations effectuated "without adherence to the minimum procedures required by *that Clause*." 419 U.S. at 574 (emphasis added). *Plyler v. Doe*, 457 U.S. 202 (1982), on which the plaintiffs also rely, is no different; that case considered an Equal Protection Clause challenge to a state law denying funds for the education of undocumented students, *id.* at 221–23, and is entirely silent on the meaning of "private property" under the Takings Clause. Instead, in the case most directly on point, the Ninth Circuit recently rejected a Takings Clause challenge aimed at a public school district, holding that the "existence of a legally recognizable property interest" in public education under the Due Process Clause is "not sufficient to establish that the right at issue . . . warrants protection under the Takings Clause." *Zeyen v. Bonneville Joint Dist., # 93*, 114 F.4th 1129, 1140 (9th Cir. 2024).

7

This is not surprising because, as the district court observed, it is well established that "private property" as used in the Takings Clause is defined more narrowly than the term "property" in other contexts, "particularly compared to the Due Process Clause of the Fourteenth Amendment." *Id.* at 1141; *see, e.g.*, *Kizas v. Webster*, 707 F.2d 524, 540 (D.C. Cir. 1983) ("[b]road due process 'property' concepts are [] inapposite" to Takings Clause inquiry); *Burns v. PA Dep't of Corr.*, 544 F.3d 279, 285 n.3 (3d Cir. 2008) ("'Property' as used in the Takings Clause is defined much more narrowly than in the due process clause." (citation omitted)); *Pittman v. Chicago Bd. of Educ.*, 64 F.3d 1098, 1104 (7th Cir. 1995) (similar). The Supreme Court has recognized that the Takings Clause and Due Process Clause are not coextensive, and has identified constitutionally protected property interests that may be reduced or eliminated, in compliance with procedural requirements, without effecting a taking. *See Bowen v. Gilliard*, 483 U.S. 587, 604–05 (1987). And our court has done the same. *Scott v. Greenville Cnty.*, 716 F.2d 1409, 1421–22 (4th Cir. 1983) ("entitlement to permit issuance" was "sufficiently a 'species of property' to require constitutional protection" under the Due Process Clause but was "not in the nature of interests the deprivation of which is encompassed by the Fifth Amendment 'takings' doctrine").

In short, and as the district court held, the plaintiffs' argument, conflating "property interests" under the Due Process Clause with "private property" covered by the Takings Clause, is unavailing. This may well be enough to dispose of their appeal, as they have not alleged any other ground on which they might prevail. And indeed, the right to public

8

education in Virginia is not "private property" for Takings Clause purposes under any available theory.

The Takings Clause, recall, applies not to "property" generally but only to "private property."  In analyzing the nature of property under the Takings Clause, our court has used a number of tools.  We look to the "traditional rules of property law," asking whether a purported owner has "full rights of 'possession, control and disposition,'" *see Washlefske v. Winston*, 234 F.3d 179, 184–85 (4th Cir. 2000), or "'free use, enjoyment and disposal' . . . and the 'right to exclude others,'" *South Carolina State Educ. Assistance Auth. v. Cavazos*, 897 F.2d 1272, 1276 (4th Cir. 1990) (first quoting *Buchanan v. Warley*, 245 U.S. 60, 74 (1917); then quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1011 (1984)). We also have considered whether a purported property interest is certain or, instead, subject to change by public entities, sometimes using the terms "vested" and "non-vested" to capture the distinction.  *See Cavazos*, 897 F.2d at 1276–77.  And we have found that property coming within the "complete[] control" of the government can thereby "lose[] its character as 'private property.'"  *Id.* at 1276.

We need not determine which of these analytical paths to walk because no matter which we choose, they all lead us to the same place:  The public education guaranteed to the plaintiffs' children is not their "private property."  The Virginia General Assembly, Board of Education, and local school boards retain significant authority to establish, maintain, and alter Virginia's education system at their discretion.  Va. Const. art. VIII; *Scott*, 443 S.E.2d at 141–43.  As the Ninth Circuit explained in *Zeyen*, in holding that the right to a free public education under Idaho law does not constitute private property, "what

9

constitutes public education itself is subject to change" at government discretion, making it "fundamentally incompatible with private ownership." 114 F.4th at 1144. The General Assembly governs public education through a comprehensive statutory scheme that regulates virtually every aspect of the education system. *See* Va. Code tit. 22.1. These regulations make clear that public education is not "handed to students and parents for their use, enjoyment, disposal, or control as private property." *Zeyen*, 114 F.4th at 1143. Rather, a student's right to the use of public education is subject to countless restrictions and requirements. *See, e.g.*, Va. Code §§ 22.1-79.5 (prohibiting use and distribution of tobacco), -254 (compulsory attendance), -272 (public health requirements), -276.2 (discipline for disrupting class). And a student cannot buy, sell, or assign her right to attend public school, and has no right to exclude others. Simply put, a person guaranteed a right to public education in Virginia does not possess the "bundle of rights that are commonly characterized as property" as understood by the Takings Clause. *Ruckelshaus*, 467 U.S. at 1011 (citation omitted); *Zeyen*, 114 F.4th at 1142.[2]

## III.

For the reasons given above, we affirm the judgment of the district court.

---

[2] Because the district court held that the right to public education in Virginia does not qualify as "private property," it did not reach FCPS's alternative arguments under the Takings Clause: that there was no "taking," in that it continued to provide education to the plaintiffs' children, albeit remotely; and that public education cannot be taken "for public use." J.A. 229 n.9. We agree with the district court, and so likewise have no need to reach those issues.

*AFFIRMED*