**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 23-2071**

───────────────

STEVE KOVACHEVICH, on behalf of himself and all similarly situated individuals,

    Plaintiff – Appellant,

  v.

NATIONAL MORTGAGE INSURANCE CORPORATION,

    Defendant – Appellee,

  and

LOANCARE, LLC,

    Defendant.

───────────────

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.  Jamar Kentrell Walker, District Judge.  (2:22-cv-00468-JKW-DEM)

───────────────

Argued:  December 10, 2024                    Decided:  June 16, 2025

───────────────

Before GREGORY and HARRIS, Circuit Judges, and KEENAN, Senior Circuit Judge.

───────────────

Affirmed in part and vacated and remanded in part by published opinion.  Judge Harris wrote the opinion, in which Judge Gregory and Judge Keenan joined.

───────────────

**ARGUED:**  Matthew G. Rosendahl, KELLY GUZZO PLC, Fairfax, Virginia, for Appellant.  Joseph Nicholas Froehlich, JNF LAW P.C., Cary, North Carolina, for Appellee.

**ON BRIEF:** Kristi C. Kelly, KELLY GUZZO, PLC, Fairfax, Virginia, for Appellant. Gregory T. Casamento, LOCKE LORD LLP, New York, New York, for Appellee.

———————

PAMELA HARRIS, Circuit Judge:

When would-be homebuyers take out mortgage loans, their lenders sometimes require them to purchase private mortgage insurance. The federal Homeowners Protection Act provides for the cancellation of those requirements when the insurance is no longer necessary to protect lenders. The Act also entitles homebuyers, under certain circumstances, to a refund of unearned premiums they may have paid for their insurance. *See* 12 U.S.C. § 4902(f). The scope of that refund entitlement is the issue on appeal.

Homebuyer Steve Kovachevich was voluntarily released by his mortgage servicer from his obligation to carry private mortgage insurance. When he was unable to obtain a refund of premiums he had prepaid, he brought this action in federal court. The district court dismissed Kovachevich's claim under the Homeowners Protection Act, holding that he was not entitled to a refund under § 4902(f). We agree, and affirm the dismissal of Kovachevich's federal claim. We vacate the dismissal of Kovachevich's accompanying state-law claims and remand so that the district court may consider whether to exercise supplemental jurisdiction over those claims.

## I.

### A.

Congress passed the Homeowners Protection Act ("HPA" or "Act"), 12 U.S.C. § 4901 *et seq.*, in 1998 to regulate the business of private mortgage insurance. To protect themselves from the risk of default, mortgage lenders typically require homebuyers unable to make down payments of at least 20 percent to purchase private mortgage insurance, or

3

"PMI."  But as homeowners pay down their mortgage loans, the need for this insurance also decreases.  Concerned that mortgage lenders were nevertheless requiring PMI for the entire life of their loans, Congress established, through the HPA, certain benchmarks for the termination of PMI obligations.

Under § 4902 of the Act, the requirement to carry PMI must be cancelled if the borrower so requests, *see* 12 U.S.C. § 4902(a), or will be terminated automatically, *see id.* § 4902(b)–(c), if a homebuyer meets one of three specified standards, each turning in part on the extent to which he has paid down his mortgage.[1]  Section 4902 also provides for the timely return to the borrower of "unearned premiums," or premiums already paid when PMI is terminated or cancelled:

> (1) *In general*  Not later than 45 days after the termination or cancellation of a private mortgage insurance requirement under this section, all unearned premiums for private mortgage insurance shall be returned to the mortgagor by the servicer.

> (2) *Transfer of funds to servicer*  Not later than 30 days after notification by the servicer of termination or cancellation of private mortgage insurance under this chapter with respect to a mortgagor, a mortgage insurer that is in possession of any unearned premiums of that mortgagor shall transfer to the

---

[1] In summary, once a homeowner has paid down at least 20 percent of the original value of his home, he reaches a "cancellation date," 12 U.S.C. § 4901(2), entitling him to cancellation upon request so long as he has reliably made payments and the value of his home has not declined.  12 U.S.C. § 4902(a).  But when a homeowner pays down at least 22 percent, he triggers a statutory "termination date," 12 U.S.C. § 4901(18), and his insurance requirement automatically ends so long as he is current on his payments, regardless of his payment history or the current value of his home.  12 U.S.C. § 4902(b).  The insurance requirement is likewise terminated automatically if a homeowner reaches the midpoint of his mortgage's amortization period and is current in his payments.  12 U.S.C. § 4902(c).

4

servicer of the subject mortgage an amount equal to the amount of the unearned premiums for repayment in accordance with paragraph (1).

§ 4902(f)(1)–(2).

Finally, the Act includes a rule of construction clarifying that § 4902 does not preclude voluntary agreements by mortgage holders to terminate PMI requirements, even if § 4902's statutory triggers for termination and cancellation have not been satisfied. 12 U.S.C. § 4910(b).

**B.**

1.

Plaintiff Steve Kovachevich seeks the return of PMI premiums that he prepaid when taking out a mortgage to buy his Virginia home in July 2020.[2] Because Kovachevich made a down payment of less than 20 percent of his home's purchase price, he was required to purchase PMI. A year later, Kovachevich requested that LoanCare, his mortgage servicer, cancel his PMI. LoanCare denied his request, explaining that Kovachevich did not appear to have paid down his mortgage enough to qualify for cancellation under § 4902(a) of the HPA. But LoanCare did agree to voluntarily cancel Kovachevich's PMI requirement upon the satisfaction of certain conditions. After Kovachevich met those conditions, LoanCare cancelled his PMI.

---

[2] We take these facts from Kovachevich's amended complaint and the attached exhibits. In reviewing a motion to dismiss, we "accept as true all well-pleaded allegations" and "may also consider documents attached to the complaint as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (internal citations omitted).

Kovachevich then requested a refund, pro-rated, of the PMI premiums he had already prepaid to his mortgage insurer, the National Mortgage Insurance Corporation ("NMIC"). Both LoanCare and NMIC denied that request, telling Kovachevich that his payments were non-refundable.

2.

Kovachevich filed suit in the Eastern District of Virginia, on behalf of himself and a putative class, alleging that NMIC's failure to refund his unearned PMI premiums violated the Homeowners Protection Act. He also pled state-law claims of unjust enrichment and conversion. NMIC moved to dismiss, arguing that Kovachevich was not entitled to relief under the Act and that his state-law claims were preempted and without merit.[3]

The district court granted NMIC's motion to dismiss. *Kovachevich v. Nat'l Mortgage Ins. Corp.*, 2023 WL 8539534 (E.D. Va. Sep. 22, 2023). After thoroughly analyzing the statutory text and structure, the court held that § 4902(f) of the HPA did not entitle Kovachevich to a refund because his PMI was cancelled by way of voluntary agreement and not by operation of § 4902's statutory criteria. *Id.* at *2–5.

The court began with the first paragraph of § 4902(f), which mandates that mortgage servicers refund unearned PMI premiums within 45 days of "the termination or cancellation of a private mortgage insurance requirement *under this section*[.]" 12 U.S.C.

---

[3] Kovachevich also sued LoanCare, alleging that it had violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e)(2), and an accompanying regulation, 12 C.F.R. § 1024.36(d)(1)(ii). The parties settled and agreed to a stipulated dismissal with prejudice, and those claims are not before us on appeal.

§ 4902(f)(1) (emphasis added).  The district court held, and the parties agree, that this rule applies only when PMI is terminated under a statutory benchmark laid out in § 4902(a), (b) or (c) – i.e., "under this section."  Before the district court, Kovachevich argued that he could invoke subsection (f)(1) because he was entitled to termination of his PMI upon request under § 4902(a).  The district court rejected Kovachevich's § 4902(a) claim as inconsistent with the relevant statutory text, 2023 WL 8539534, at *3–4, and Kovachevich has abandoned that argument on appeal.

That left Kovachevich with his back-up position:  that notwithstanding the voluntary nature of his cancellation, he was entitled to a refund under § 4902(f)'s second paragraph. That paragraph, titled "Transfer of funds to servicer," does just what its name suggests, directing a mortgage insurer "in possession of any unearned premiums" to "transfer" to the mortgage servicer "an amount equal to the amount of the unearned premiums *for repayment in accordance with paragraph (1)*."  12 U.S.C. § 4902(f)(2) (emphasis added). As the district court saw it, this subsection comes into play only if a borrower has a valid claim to a refund under subsection (f)(1), because the "plain language of § 4902(f)(2) ties a mortgagor's entitlement to unearned premiums to what they are owed under § 4902(f)(1)."  2023 WL 8539534, at *4.  So Kovachevich, who had no claim under § 4902(f)(1), could not recover under § 4902(f)(2), either.  As far as Kovachevich was concerned, the court concluded, the "'amount equal to the amount of unearned premiums for repayment in accordance with [§ 4902(f)(1)]' is zero."  *Id.* (quoting § 4902(f)(2)).

After carefully considering Kovachevich's counterarguments, the district court held that Kovachevich had failed to state a claim under the HPA.  *Id.* at *5.  And because there

was no longer a live federal claim, the district court concluded, it "now lack[ed] subject-matter jurisdiction" over Kovachevich's state claims for conversion and unjust enrichment, and it dismissed those claims, as well. *Id.*[4]

Kovachevich timely appealed.

## II.

We review the district court's dismissal of Kovachevich's Homeowners Protection Act claim de novo, *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 179–80 (4th Cir. 2009), and we affirm. Our circuit appears to be the first to address the meaning of § 4902(f). But we think it is clear that the district court correctly read and applied that provision. The HPA entitles a borrower to the return of unearned premiums if his private mortgage insurance is cancelled or terminated at one of § 4902's three statutory endpoints. *See* 12 U.S.C. § 4902(f)(1). But as the district court held, there is no entitlement to the return of unearned premiums when PMI is cancelled by voluntary agreement and before a homebuyer satisfies one of the statutory criterion.[5]

---

[4] Before the district court, Kovachevich argued that the court could exercise diversity jurisdiction over his state claims under the Class Action Fairness Act. The district court rejected that argument, *Kovachevich*, 2023 WL 8539534, at *5–6, and Kovachevich does not raise it again on appeal.

[5] This appeal does not present the question of whether Kovachevich, if he continues to pay down his mortgage and ultimately satisfies one of § 4902's statutory benchmarks, could then pursue a refund of unearned premiums under § 4902(f)(1). We note for the record, however, that counsel for NMIC took the position at oral argument that this route for relief would be available.

8

## A.

We start with the text of § 4902(f)(1) and § 4902(f)(2). Like the district court, we believe those two provisions can only be understood as operating in tandem, with subsection (f)(1) mandating and subsection (f)(2) facilitating the return of unearned PMI premiums to homebuyers who meet one of § 4902's statutory standards.

Some of this is common ground. There is no dispute that in § 4902, Congress set out a carefully calibrated set of benchmarks, identifying the three circumstances under which it believed PMI would no longer be necessary to protect the interests of a mortgage lender. *See* 12 U.S.C. § 4902(a)–(c). And the parties agree that under § 4902(f)(1), a mortgage "servicer" must refund any unearned premiums to the homebuyer if and only if the homebuyer's PMI requirement has ended by operation of one of those statutory benchmarks. *Kovachevich*, 2023 WL 8539534, at *2.

But sometimes, as Congress understood, the mortgage *servicer* subject to § 4902(f)(1)'s refund mandate will not be in possession of a homebuyer's PMI premiums at the time of cancellation or termination. Instead, the servicer may have acted as an intermediary, with the mortgage *insurer* – here, NMIC – taking ultimate possession of the payments. So to facilitate servicer refunds under § 4902(f)(1), Congress paired that provision with one for the "transfer of funds to servicer," obligating a "mortgage insurer []　in possession of any unearned premiums" to "transfer to the servicer [] an amount equal to the amount of the unearned premiums *for repayment in accordance with paragraph (1)*." 12 U.S.C. § 4902(f)(2) (emphasis added).

9

As the district court reasoned, the plain language of paragraph (2) expressly links it to paragraph (1), tying a mortgage insurer's obligation to *transfer* funds to a homebuyer's right to the *return* of those funds under § 4902(f)(1). *Kovachevich*, 2023 WL 8539534, at *4. And it follows, we agree with the district court, that a homebuyer with no claim to a refund under § 4902(f)(1) – like Kovachevich – also has no route to recovery under § 4902(f)(2). We cannot much improve on the district court's formulation here: Section 4902(f)(2) does, as Kovachevich argues, require a mortgage insurer to transfer unearned premiums to a mortgage servicer. But the amount of unearned premiums to be transferred is the amount to be repaid to the mortgagor "in accordance with paragraph (1)" – and in Kovachevich's case, that amount is zero. *Kovachevich*, 2023 WL 8539534, at *4.

There is an additional problem with Kovachevich's invocation of § 4902(f)(2). On its face, § 4902(f)(2) mandates only that unearned premiums be transferred to Kovachevich's *mortgage servicer*, not to Kovachevich himself – which would leave his servicer with a windfall because (as all agree) it would not be required to pass those premiums on to Kovachevich under § 4902(f)(1).[6] To avoid that counter-intuitive result, Kovachevich insists that § 4902(f)(2) both directs a transfer of unearned premiums from the mortgage insurer to the servicer *and* requires the servicer to return those premiums to

---

[6] As the district court noted, the HPA's civil liability clause allows homebuyers to bring properly pleaded claims under § 4902(f)(2), despite the fact that § 4902(f)(2)'s "plain language" provides only for the transfer of funds from mortgage insurer to mortgage servicer. *See Kovachevich*, 2023 WL 8539534, at *4 n.2; 12 U.S.C. § 4907(a).

10

the homebuyer.  But that reading, once again, fails to account for the interaction between the two paragraphs of § 4902(f).  Read as a whole, § 4902(f) clearly separates out the two obligations Kovachevich would push together, with subsection *(f)(1)*, not (f)(2), doing the work of ensuring that a mortgage servicer return unearned premiums to the homebuyer.  If Kovachevich's reading of § 4902(f)(2) were correct – if that provision alone mandated refunds to homebuyers whenever their PMI was cancelled for any reason – there would be nothing left for § 4902(f)(1) to do.  *See Ysleta del Sur Pueblo v. Texas*, 596 U.S. 685, 698–99 (2022) (describing as a "longstanding canon[] of statutory construction" that courts "normally seek to construe Congress's work 'so that effect is given to all provisions, so that no part will be inoperative or superfluous, void or insignificant'" (internal citation omitted)).

**B.**

Like the district court, we are unpersuaded by Kovachevich's arguments for his alternative interpretation of § 4902(f)(2) – an interpretation, we note, that no court appears to have embraced.  First, Kovachevich points to what the district court termed the "savings clause" of § 4910(b), which clarifies that § 4902 does not preclude voluntary agreements to cancel PMI even before one of § 4902's statutory benchmarks is reached.  *See* 12 U.S.C. § 4910(b); *Kovachevich*, 2023 WL 8539534, at *4.  We of course agree with Kovachevich that under § 4910(b), he and his mortgage servicer could – as they did – agree to terminate his PMI obligations earlier than the Act otherwise would have required.  But that does not answer the question before us now, which is whether that voluntary cancellation under § 4910(b) triggers the same refund obligation as would a statutory cancellation under

11

§ 4902. And as the district court emphasized, § 4910(b), unlike § 4902, does *not* "create a separate cause of action to obtain unearned premiums." *Kovachevich*, 2023 WL 8539534, at *4 (internal quotation marks and citation omitted). If Congress had intended to require refunds under § 4910(b) as it did under § 4902, the logical place to do so would have been in § 4910(b).

Kovachevich contends, however, that the text of § 4902(f) itself provides for the return of unearned premiums after a voluntary cancellation. The argument goes like this: Section 4902(f)'s first paragraph requires refunds within 45 days of termination of PMI "under this *section*," 12 U.S.C. § 4902(f)(1) (emphasis added) – limiting its scope to statutory cancellations under § 4902. But the second paragraph requires a transfer of funds from the mortgage insurer to the servicer after the termination of PMI "under this *chapter*," 12 U.S.C. § 4902(f)(2) (emphasis added) – and § 4910(b)'s savings clause, Kovachevich points out, is in the same chapter as § 4902(f)'s refund requirement. So Congress must have intended, he finishes, to extend § 4902(f)(2)'s refund requirement to voluntary cancellations under § 4910(b).

The district court found that argument unavailing, and we agree. Yes, Congress could have used the phrase "under this section" in § 4902(f)(2), as Kovachevich argues. But by the same token, it "could have used the phrase 'under this chapter' in *§ 4902(f)(1)*, [and] deliberately chose not to." *Kovachevich*, 2023 WL 8539534, at *5 (emphasis added). On Kovachevich's own theory, in other words, § 4902(f)(1) was deliberately drafted to provide for refunds only upon cancellation under "this section" – that is, under § 4902's statutory benchmarks – and not upon voluntary cancellation under § 4910(b). *Id.* And as

12

we have explained already, it is § 4902(f)(1) that matters here. Whether or not § 4902(f)(2) reaches voluntary cancellations, what it *requires* is only the transfer of unpaid premiums in the "amount" necessary "for repayment in accordance with paragraph (1)." 12 U.S.C. § 4902(f)(2). And as Kovachevich concedes, unless a homebuyer is relieved of a PMI obligation under one of § 4902's three statutory benchmarks, that "amount" is zero. *Kovachevich*, 2023 WL 8539534, at *4.

Finally, Kovachevich appeals to the broad remedial purpose of the HPA. The HPA, Kovachevich explains, was intended to ensure that homebuyers would not continue to pay for PMI that had become unnecessary, and this purpose, he says, would be undermined if voluntary PMI cancellation did not trigger the same refund of unearned premiums as statutory cancellation. But as the district court correctly observed, congressional purpose, though it may "aid in [statutory] interpretation . . . cannot override [the] unambiguous language" of the Act. *Id*. at *5. The text of the HPA is clear, and we are not at liberty to rewrite it.

In any event, we are not convinced that the result here is inconsistent with the HPA's purpose. It is § 4902 of the Act that sets out Congress's comprehensive and detailed scheme for ensuring that homebuyers do not continue to pay for PMI once Congress deems it unnecessary, establishing three benchmarks for showing that PMI is no longer justified and requiring a return of unearned premiums once a statutory benchmark is satisfied. Congress also allowed homebuyers, if they wished, to bargain around this statutory structure – and its protections – through voluntary cancellation agreements. *See* 12 U.S.C.

13

§ 4910(b).  But the fact that homebuyers like Kovachevich may take advantage of that option does nothing to undermine the operation of the standards laid out in § 4902.

There are practical reasons, too, why Congress might have wished to treat statutory and voluntary cancellations differently when it comes to refunds.  Under § 4902, homebuyers may face a lag time between reaching a statutory benchmark and cancellation of PMI, during which they continue to make payments they are later entitled to recoup. *See, e.g.*, 12 U.S.C. § 4902(a) (cancellation upon request leaves homebuyer awaiting action by servicer and/or insurer).  In most cases involving voluntary terminations, on the other hand, a homebuyer will be able to stop making payments as soon as his agreement is effective, leaving no unearned premiums to be refunded.  Kovachevich's case, to be sure, is different, because Kovachevich opted to prepay all of his premiums when he took out his PMI – but it is entirely plausible that Congress designed its remedial structure to address the average case and not the anomaly.  *See Michigan v. Bay Mills Indian Community*, 572 U.S. 782, 794 (2014) ("Truth be told, such anomalies often arise from statutes, if for no other reason than that Congress typically legislates by parts – addressing one thing without examining all others that might merit comparable treatment.").  And even in the anomalous cases, as Kovachevich himself explains, homebuyers who enter into voluntary cancellation agreements – unlike those whose PMI is cancelled by operation of the Act – may be able to recover any unearned premiums by suing on those contracts under state law.

In sum, we agree with the district court that the relevant text and statutory structure make clear that a homebuyer is entitled to a refund of unearned premiums under the Act only if his PMI has been cancelled or terminated pursuant to one of § 4902's statutory

14

benchmarks. Accordingly, we affirm the district court's dismissal of Kovachevich's claim under the HPA.

## C.

We turn finally to Kovachevich's two claims under state law, which the district court dismissed without prejudice for want of jurisdiction. *Kovachevich*, 2023 WL 8539534, at *7. Having dismissed Kovachevich's only federal claim, the district court seemed to conclude, it necessarily lacked subject-matter jurisdiction to decide the state-law claims. *Id.* at *5.

That is not quite right. When a district court has jurisdiction over a federal claim under 28 U.S.C. § 1331, it also has supplemental jurisdiction over related state-law claims. *See* 28 U.S.C. § 1367(a); *Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). Whether a district court exercises that jurisdiction after dismissal of all federal claims is a matter of discretion. *See* 28 U.S.C. § 1367(c)(3); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). And although declining to exercise jurisdiction in those circumstances is the ordinary course, *see Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 32 (2025), it remains a matter for the district court to decide, *see City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). Because it seems the district court did not make such a decision here, we vacate the dismissal of Kovachevich's state-law claims for unjust enrichment and conversion, and remand for the court to consider whether to exercise supplemental jurisdiction.

15

**III.**

For the foregoing reasons, we affirm the district court's dismissal of Kovachevich's Homeowners Protection Act claim.  The district court's dismissal of Kovachevich's state-law unjust enrichment and conversion claims is vacated, and those claims are remanded to the district court for proceedings consistent with this opinion.

*AFFIRMED IN PART, VACATED AND REMANDED IN PART*