**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 25-1770**

---

POPPLETON NOW COMMUNITY ASSOCIATION, INC.; CURTIS EADDY, SR.; SONIA EADDY; STERLING WALKER; FRANCINA WALKER; WILLIAM H. GUNN, JR.; YVONNE BROOKS GUNN,

        Plaintiffs – Appellants,

v.

LA CITE DEVELOPMENT, LLC; LA CITE, LLC; POPPLETON DEVELOPMENT I, LLC; PSH 1B, LLC; DAN BLYTHEWOOD, JR.; MAYOR AND CITY COUNCIL OF BALTIMORE; BRANDON SCOTT; ALICE KENNEDY; HOUSING AUTHORITY OF BALTIMORE CITY; JANET ABRAHAMS; SHEILA DIXON,

        Defendants – Appellees.

---

Appeal from the United States District Court for the District of Maryland, at Baltimore. Adam B. Abelson, District Judge.  (1:24-cv-02420-ABA)

---

Argued:  January 28, 2026                Decided:  May 4, 2026

---

Before GREGORY, HARRIS, and RICHARDSON, Circuit Judges.

---

Vacated in part and remanded with instructions by published opinion.  Judge Harris wrote the opinion, in which Judge Gregory and Judge Richardson joined.

---

**ARGUED:**  Thomas K. Prevas, SAUL EWING LLP, Baltimore, Maryland, for Appellants. Anthony J. Phillips, PILLSBURY WINTHROP SHAW PITTMAN LLP, Washington,

D.C., for Appellees.  **ON BRIEF:**  Katherine S. Barrett Wiik, SAUL EWING LLP, Minneapolis, Minnesota, for Appellants.  Thomas L. Howard III, Jake B. Mitchell, PILLSBURY WINTHROP SHAW PITTMAN LLP, Washington, D.C., for Developer Appellees. Thomas Webb, Hanna Marie C. Sheehan, BALTIMORE CITY LAW DEPARTMENT, Baltimore, Maryland, for Baltimore Appellees.

―――――――――

PAMELA HARRIS, Circuit Judge:

Roughly two decades ago, the City of Baltimore entered into an agreement with a property developer to redevelop 13.8 acres of land in the city's Poppleton neighborhood. Pursuant to this agreement, the city acquired the land at issue – much of it by using eminent domain.    But in the intervening years, the redevelopment project suffered myriad complications and delays, and very little of the promised development ever occurred. Large portions of this land now sit vacant and neglected.

The plaintiffs in this case – six individuals who own property adjacent to the land at issue and a non-profit community organization – sued the developer and various Baltimore City defendants, challenging both the development agreement and subsequent actions (and inactions) of the defendants.  Two of the plaintiffs' claims are now before this court:  their Fifth Amendment takings claim, which alleges that the use of eminent domain to take their neighbors' land was unconstitutional because the property was not taken for public use, and a state law private nuisance claim.  The district court dismissed both, finding that the plaintiffs lacked Article III standing to bring their takings claim and that they failed to state a private nuisance claim under Maryland law.

We agree with the district court that both claims must be dismissed.  Because we reach that conclusion for different legal reasons, however, we vacate the district court's judgment in part and remand with instructions to (1) dismiss the plaintiffs' takings claim for failure to state a claim and (2) decline to exercise supplemental jurisdiction over the plaintiffs' private nuisance claim and dismiss it without prejudice.

3

## I.

### A.

This case arises out of long-running efforts by the City of Baltimore to redevelop the city's Poppleton neighborhood – portions of which have been designated as an urban renewal area since 1975.[1]  Beginning in 2004, the city initiated a process to redevelop 13.8 acres of land in the neighborhood.  And in September 2006, the city entered into a Land Disposition and Development Agreement ("LDDA") with the developer selected for this project.

The 13.8 acres chosen for redevelopment encompassed a number of existing city blocks with more than 500 individual homes.  As part of the LDDA, the city agreed to "use its best efforts and all legal authority" – including its "power of condemnation" where necessary – to acquire all the properties within the project area.  J.A. 109.  Once acquired by the city, these properties were sold to the developer at what the plaintiffs allege was a highly preferential price.

But the redevelopment project soon became mired in delays and complications, and litigation between the city and the developer ensued.  Starting in 2013, the parties to the LDDA amended the agreement five separate times in an effort to resolve these ongoing issues and get the project back on track.  Nonetheless, little progress was made.  By the time this lawsuit was filed in August 2024, only a single apartment complex had been

---

[1] Because the district court dismissed this case at the pleading stage, we describe the facts as alleged in the complaint and its attachments. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011); *Episcopal Church in S.C. v. Church Ins. Co. of Vt.*, 997 F.3d 149, 154–55 (4th Cir. 2021).

completed, and the project area still contained hundreds of vacant plots of land. The plaintiffs describe the site as largely abandoned and overrun by weeds, rats, trash, and other environmental nuisances.

**B.**

The plaintiffs in this case are six Baltimore residents (three couples) who live and own property directly adjacent to the redevelopment project area, as well as a non-profit community organization that advocates for current and former Poppleton residents. None of them owns property that is part of the LDDA or was taken for the redevelopment project.[2]

The plaintiffs filed this lawsuit in federal court, invoking federal question jurisdiction pursuant to 28 U.S.C. § 1331 and naming as defendants the property developer (including four corporate entities and the individual who serves as their principal officer), the Mayor and City Council of Baltimore, the Housing Authority of Baltimore City, and various current and former city officials. The five substantive counts[3] in the complaint challenge the constitutionality of the LDDA and Baltimore's land use policies more

---

[2] Property owned by one of the couples was formerly on the LDDA acquisition list and subject to eminent domain proceedings. But the city voluntarily withdrew this property from those proceedings in 2022 and removed it from the LDDA acquisition list as part of one of the amendments to the agreement. In the complaint, these plaintiffs expressly disclaim any claims they might have had for the past inclusion of their property on the acquisition list or in eminent domain proceedings, resting their claims solely on the present status of their property as adjacent to the redevelopment project area.

[3] The complaint also includes a separate count seeking a declaratory judgment. *See infra* Part II.C.

generally, as well as the impacts of the redevelopment project on the Poppleton neighborhood and its residents.

Only two of these claims are at issue in this appeal. Count I alleges that the use of eminent domain to acquire the plaintiffs' neighbors' property for the redevelopment project constituted an unlawful "taking" under both the Fifth Amendment and the Maryland Constitution because the property was not taken for public use. And Count IV claims that the blighted condition of the still-vacant land in the redevelopment project area amounts to a private nuisance under Maryland law.

## C.

In six separate motions, the defendants moved to dismiss the complaint, and the district court dismissed all the plaintiffs' claims. *Poppleton Now Cmty. Ass'n v. La Cite Dev., LLC*, 2025 WL 1707254 (D. Md. June 17, 2025).

The district court first dismissed the takings claim for lack of Article III standing, finding that the plaintiffs failed to allege "a cognizable injury in fact" to support this claim. *Id.* at *7–9. The Takings Clause of the Fifth Amendment, the district court explained, "provides that 'private property [shall not] be taken for public use, without just compensation.'" *Id.* at *8 (alteration in original) (quoting U.S. Const. amend. V).[4] Importantly, none of the individual plaintiffs alleged that any of their own property was taken. *Id.* And the taking of property belonging to their *neighbors*, the district court

---

[4] The Maryland Constitution's provision governing eminent domain "ha[s] the same meaning and effect" as the Takings Clause of the U.S. Constitution. *Litz v. Md. Dep't of Env't*, 131 A.3d 923, 930 (Md. 2016) (citing Md. Const. art. III, § 40).

6

reasoned, did not constitute an actual injury to the *plaintiffs* that would allow them to challenge as unconstitutional the use of eminent domain. *Id.* Similarly, the community organization plaintiff lacked standing because the complaint never alleged "that any of its members had their properties taken." *Id.* The district court also rejected the plaintiffs' reliance on Maryland state law standing doctrines, explaining that state statutes conferring additional types of standing could not alter Article III's minimum standing requirements for federal courts. *Id.* at *7–8.

After dismissing the plaintiffs' other federal law claims, *see id.* at *9–11, the district court turned to the state law private nuisance claim, *id.* at *12. Here, the district court concluded that the plaintiffs had standing to sue most of the defendants.[5] *Id.* The plaintiffs satisfied the injury-in-fact requirement for this claim, the district court reasoned, by alleging that they had suffered reductions in their property values and the loss of use and enjoyment in their homes. *Id.* At least some of these injuries, the district court found, were "related" to the condition of the abandoned land in the redevelopment project area, which in turn had at least "*some* causal connection" to actions taken by the developer and the city, including the decision to take that land in the first place. *Id.* And these injuries, moreover, were, "at least in theory, redressable." *Id.*

But on the merits, the district court found that the complaint failed to state a private nuisance claim against any of the remaining defendants. *Id.* at *12–13. Maryland law

---

[5] The plaintiffs lacked standing to sue the Housing Authority as well as its President and CEO, the district court found, because the complaint did not allege any causal connection between these defendants' actions and the plaintiffs' injuries. *Poppleton Now*, 2025 WL 1707254, at *12. The plaintiffs do not challenge that holding on appeal.

defines a private nuisance as "a nontrespassory invasion of another's interest in the private use and enjoyment of land" that is "substantial and unreasonable." *Id.* at *13 (first quoting *Rosenblatt v. Exxon Co.*, 642 A.2d 180, 190 (Md. 1994), and then quoting *Gorman v. Sabo*, 122 A.2d 475, 477 (Md. 1956)). Here, the district court concluded that the plaintiffs offered only conclusory allegations that their use and enjoyment of their property had been impacted. *Id.* And the district court determined that the plaintiffs' allegations of interference with the use and enjoyment of their property – which largely related to the condition of the neighborhood around the plaintiffs' homes – were "not comparable" to the types of interference actionable under Maryland private nuisance law. *Id.*

After the district court dismissed the complaint, the plaintiffs timely appealed. Before this court, they challenge only the dismissal of their takings and private nuisance claims, as well as the district court's failure to address their separately pled claim seeking a declaratory judgment.

## II.

### A.

The district court dismissed the plaintiffs' takings claim for lack of Article III standing, finding that they failed to allege a cognizable injury in fact because they did not allege that they owned any taken property. *Poppleton Now*, 2025 WL 1707254, at *7–9. We review a district court's dismissal for lack of standing de novo. *Ass'n of Am. R.R.s v. Hudson*, 144 F.4th 582, 589 (4th Cir. 2025). "When, as here, standing is challenged on the pleadings, we accept as true all material allegations of the complaint and construe the

8

complaint in favor of the complaining party, so long as the allegations state a claim to relief that is plausible on its face." *Id.* (internal citations and quotation marks omitted).

We agree with the district court that the plaintiffs' takings claim cannot proceed. We also think the district court correctly identified this claim's fatal flaw: The plaintiffs do not allege that any of their own property was taken. But we conclude that this omission is better characterized as the failure to allege an essential element of a takings claim on the merits, rather than the lack of a cognizable injury in fact for Article III standing purposes. In other words, the plaintiffs fail to state a takings claim.

### 1.

To establish Article III standing, a plaintiff must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). The purpose of this inquiry is to ensure the plaintiff has a "personal stake" in the case, *id.*, and not merely a "generally available grievance about government," *Gill v. Whitford*, 585 U.S. 48, 54 (2018).

Here, the individual plaintiffs each allege that property they own has diminished in value as a result of the LDDA and the related use of eminent domain. These allegations, we conclude, are sufficient to establish that the plaintiffs have a "personal stake" in – and thus Article III standing to bring – their takings claim. *See TransUnion*, 594 U.S. at 423.

Consider first the injury-in-fact requirement, where the district court focused its analysis. The injury alleged by each individual plaintiff is a reduction in the value of their

9

property. *See, e.g.*, J.A. 25, 39, 50; *Poppleton Now*, 2025 WL 1707254, at *6, *12. As we have explained, "past monetary loss is a quintessential injury in fact." *Penegar v. Liberty Mut. Ins. Co.*, 115 F.4th 294, 302 (4th Cir. 2024). This type of "monetary harm[]" constitutes a "traditional tangible harm[]" that "readily qualif[ies]" as a concrete injury under Article III. *TransUnion*, 594 U.S. at 425. The loss of property value, as alleged in the complaint, is an injury that affected these plaintiffs "in a personal and individual way" – as owners of property adjacent to the redevelopment project area – and is not merely a "generalized grievance" or a "general legal, moral, ideological, or policy objection" to the project. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). And the loss they claim is "actual," not "conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted).

The plaintiffs' alleged loss of property value therefore satisfies all the requirements for a cognizable injury in fact, as the district court itself concluded when analyzing the plaintiffs' private nuisance claim. *See Poppleton Now*, 2025 WL 1707254, at *12. That is all we require at this stage of the litigation. "With regard to the injury-in-fact prong of the standing test, [the plaintiffs] need not prove the merits of [their] case in order to demonstrate that [they] ha[ve] Article III standing." *Pitt Cnty. v. Hotels.com, L.P.*, 553 F.3d 308, 312 (4th Cir. 2009); *see also Cooksey v. Futrell*, 721 F.3d 226, 239 (4th Cir. 2013) ("[F]or purposes of standing, we must assume the Plaintiffs' claim has legal validity."). By alleging they suffered an injury that is "concrete, particularized, and actual," the plaintiffs have satisfied their burden at the first step of the standing inquiry. *See TransUnion*, 594 U.S. at 423.

10

As to causation and redressability, the plaintiffs claim their property value losses resulted from the condemnation of properties in their neighborhood and the subsequent condition of the vacant land in the redevelopment project area, which is adjacent to their homes. *See, e.g.*, J.A. 25, 39, 50. In analyzing standing for the plaintiffs' private nuisance claim, the district court found that there was "*some* causal connection" between the "alleged reduction" in the plaintiffs' property values and the defendants' actions, including that "some of the complained-of neighborhood conditions came about after the City listed homes in the neighborhood for condemnation." *Poppleton Now*, 2025 WL 1707254, at *12. We agree that the connections identified by the district court are sufficient to satisfy the "relatively modest" causation standard at the motion-to-dismiss stage. *Id.* (quoting *DiCocco v. Garland*, 52 F.4th 588, 592 (4th Cir. 2022)). And we also agree that this injury is, "at least in theory, redressable," including by "a financial judgment." *Id.*

Because the plaintiffs have satisfied each of the Article III standing requirements, they have standing to bring their takings claim.

2.

That the plaintiffs have standing to bring their takings claim, however, does not mean they can succeed on the merits of that claim. Again, as the district court correctly identified, the individual plaintiffs "all maintain ownership over their properties and . . . do not contend that any of their properties have been taken," either physically or by regulation.

11

*Poppleton Now*, 2025 WL 1707254, at \*8.[6]  This fact does not preclude the plaintiffs from establishing standing, as we have explained.  But it does prevent them from succeeding on the merits.  As our precedents make clear, the Takings Clause does not provide the plaintiffs with a mechanism to challenge the taking of their former neighbors' properties because holding a protected property interest in taken property is an essential element of any takings claim.

The Takings Clause "provides that 'private property' shall not 'be taken for public use, without just compensation.'"  *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 163–64 (1998) (quoting U.S. Const. amend. V).  This provision, we have explained, "protects private property."  *Quinn v. Bd. of Cnty. Comm'rs*, 862 F.3d 433, 439 (4th Cir. 2017).  For that reason, "[t]he analysis in a takings case necessarily begins with determining whether the government's action actually interfered with" the plaintiff's property rights.  *Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322, 330 (4th Cir. 2005).  And we have found that plaintiffs fail to state a takings claim when they "fail[] to show" that they hold "a sufficient property interest" in the thing they allege the government took.  *Quinn*, 862 F.3d at 439; *see also, e.g.*, *Chollet v. Brabrand*, 137 F.4th 241, 247 (4th Cir. 2025) (affirming dismissal of a takings claim because the plaintiffs did not hold a "private property" right in public education); *accord, e.g.*, *Degan v. Bd. of Trs. of Dall. Police &*

---

[6] In their appellate briefing, the plaintiffs assert that members of the community organization plaintiff had their property taken as part of the LDDA.  But that allegation is not made in the complaint, which states only that the organization "advocates" for current and former residents of the neighborhood.  *See* J.A. 27, 51; *Poppleton Now*, 2025 WL 1707254, at \*8.

*Fire Pension Sys.*, 956 F.3d 813, 815 (5th Cir. 2020) ("[T]o allege a takings claim, Plaintiffs must have a property interest . . . ."); *Zeyen v. Bonneville Joint Dist., # 93*, 114 F.4th 1129, 1139 (9th Cir. 2024) (explaining that, to state a takings claim, "the plaintiff must own 'private property'" that was "taken"); *Karuk Tribe of Cal. v. Ammon*, 209 F.3d 1366, 1374 (Fed. Cir. 2000) ("A takings claim calls for a two-step analysis" where, in the first step, "a court determines whether the plaintiff possesses a valid interest in the property affected by the governmental action[.]").

In many cases, deciding whether the plaintiff has alleged a property interest that is sufficient to state a takings claim requires examining whether the interest claimed is protected "private property" within the meaning of the Takings Clause. *See, e.g.*, *Chollet*, 137 F.4th at 245–47; *Quinn*, 862 F.3d at 439–40. Our task is much simpler here, however, because the plaintiffs have not *claimed* any property interest in anything taken by the government. Nor have they identified any cases holding that someone other than the owner of the taken property may bring a takings claim. As explained above, caselaw from our court and other circuits makes clear why: A protected property interest in the taken property is an essential element of a takings claim. The plaintiffs' failure to satisfy this element means their takings claim fails as a matter of law.[7]

---

[7] Though it may seem far afield, when it comes to the distinction between lack of standing and failure to state a claim, there is a helpful analogue in Fourth Amendment jurisprudence. Fourth Amendment rights are "personal rights," which means that only individuals with "a legitimate expectation of privacy in the invaded place" can challenge a search. *Rakas v. Illinois*, 439 U.S. 128, 133–34, 143 (1978). This restriction is sometimes referred to colloquially as Fourth Amendment "standing." But caselaw makes clear that it is not jurisdictional and "should not be confused with Article III standing." *Byrd v. United*
(Continued)

For these reasons, we agree with the district court that the plaintiffs' takings claim must be dismissed. To align this dismissal with our reasoning, however, we vacate the portion of the judgment dismissing the plaintiffs' takings claim for lack of standing and remand to the district court with instructions to dismiss this claim for failure to state a claim.

**B.**

We next turn to the plaintiffs' state law private nuisance claim. We review a dismissal for failure to state a claim de novo. *Meridian Invs., Inc. v. Fed. Home Loan Mortg. Corp.*, 855 F.3d 573, 580 (4th Cir. 2017).

Here, the district court considered the private nuisance claim after it had dismissed each of the plaintiffs' federal law claims. *See Poppleton Now*, 2025 WL 1707254, at *12. As discussed, the district court found that the plaintiffs had standing as to most of the defendants but failed to state a private nuisance claim under Maryland law. *Id.* at *12–14. On appeal, we do not reach the district court's substantive analysis. Instead, we conclude that the district court skipped an important step by considering the merits of this claim without first deciding whether to exercise supplemental jurisdiction.

When, as here, a district court has subject matter jurisdiction under 28 U.S.C. § 1331, "it also has supplemental jurisdiction over related state-law claims." *Kovachevich*

---

*States*, 584 U.S. 395, 410–11 (2018). Instead, it operates as part of the Fourth Amendment merits analysis, to "captur[e] the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief." *Id.* at 410. So too here: As described above, a plaintiff must have a protected property interest in taken property to raise a Takings Clause challenge. And while that might sound like an Article III standing rule, it actually tests whether the plaintiff has a cognizable claim to relief.

*v. Nat'l Mortg. Ins. Co.*, 140 F.4th 548, 556 (4th Cir. 2025). But if it dismisses all the federal claims, and no other basis for jurisdiction over the state law claims exists, the district court must decide whether to exercise supplemental jurisdiction over the remaining state law claims. *Id.*

As a general rule, "when a district court dismisses all federal claims in the early stages of litigation . . . it should decline to exercise jurisdiction over any remaining pendent state law claims by dismissing those claims without prejudice." *Henderson v. Harmon*, 102 F.4th 242, 251 (4th Cir. 2024); *see also Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 32 (2025) (explaining that district courts "ordinarily should" decline to exercise supplemental jurisdiction to "kick the case to state court"). The district court should have done so here. All the plaintiffs' federal claims were dismissed when this litigation was still in its "early stages" – at the motion-to-dismiss stage – and no discovery had yet occurred. *See Henderson*, 102 F.4th at 251. Moreover, the issues in this case implicate particularly strong state interests, and there is no substantial caselaw applying Maryland private nuisance law to claims analogous to this one. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (explaining that one reason not to exercise supplemental jurisdiction is to avoid "[n]eedless decisions of state law").

We therefore vacate the dismissal of the plaintiffs' private nuisance claim for failure to state a claim, and remand to the district court with instructions to decline to exercise supplemental jurisdiction over this claim and dismiss it without prejudice. *See Oneida Indian Nation of N.Y. v. Madison Cnty.*, 665 F.3d 408, 436–40, 444 (2d Cir. 2011).

15

**C.**

Finally, we briefly consider the plaintiffs' contention that the district court erred by not specifically addressing their separately pled claim for a declaratory judgment.

This was not error. The Declaratory Judgment Act "does not create an independent cause of action." *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244–45 (2d Cir. 2012). It "is remedial only" and does not "create[] any substantive rights." *CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 55 (4th Cir. 2011); *accord* 22A Am. Jur. 2d *Declaratory Judgments* § 163, Westlaw (database updated Feb. 2026) ("Under the Federal Declaratory Judgment Act, a count for declaratory relief is not cognizable as [a] separate cause of action, but it is more properly included in [the] prayer for relief[.]"); *id.* § 162 ("A complaint for a declaratory judgment must state a claim on which relief can be granted or [a] cause of action, meaning that the plaintiff must plead substantive claims for which declaratory relief may be granted."). Thus, when all the plaintiffs' substantive claims were dismissed, their declaratory judgment claim also necessarily failed. *CGM*, 664 F.3d at 56.

**III.**

For the foregoing reasons, we vacate the judgment of the district court in part, and remand with instructions for the district court to dismiss the plaintiffs' takings claim for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), decline to exercise supplemental jurisdiction over the plaintiffs' private nuisance claim, and dismiss that claim without prejudice.

*VACATED IN PART AND REMANDED WITH INSTRUCTIONS*

16